JAMES KIMBALL, Plaintiff in error, who was Defendant below, v. DANIEL KELSEY.

1. The first section of the act of the 6th March, 1820, and the forty-fifth section of the act of 16th June, 1826, relating to waiving of inquisitions to condemn or extend land, were only declaratory of the existing practice.

2. Where the waiver of an inquisition was contained in a warrant of attorney to confess judgment, and in the entry of judgment upon the warrant a memorandum was made of the waiver upon the record, though the warrant itself was not filed in the prothonotary's office, this was held sufficient.

3. Evidence offered on the trial in court inconsistent with the affidavit and claim of title, made in proceedings before two justices to recover possession of land sold at sheriff's sale, was rightly rejected.

ERROR to the Common Pleas of Tioga county.

This was a proceeding in the court below, upon a recognisance taken under the 117th section of the act of 1836, relating to executions.

The facts of the case were as follows: One John Starkweather being indebted to Daniel Kelsey, gave him a single bill, with warrant of attorney, in the following form:

"For value received, I promise to pay Daniel Kelsey, or bearer, the sum of $157 89, in manner following: $81 59 by the first day of June next, with interest, and $76 30 by the first December, 1838, with interest; and thereby authorize any attorney of any court of record in Pennsylvania to confess judgment against me for said sum, with costs of suit, with release of errors, with stay of execution until said payments become due, and *with waiver of the right of inquisition on real estate.* Witness my hand and seal the 28th October, 1837.

"JOHN STARKWEATHER."

On this single bill, on the 31st October, 1837, judgment was entered for plaintiff, (Kelsey,) *waiving right of inquisition.* This entry being made upon the record, the attorney, who confessed the judgment, retained the bill and warrant in his own possession. At the time this judgment was entered, Starkweather was, and for twenty

years before had been, in possession of a tract of land, of which he was the first improver. He had commenced a bonâ fide settlement upon it in 1817, and continued the same uninterruptedly. On the 22d August, 1838, Kelsey issued a fi. fa. upon his judgment, which was returned, "stayed by order of plaintiff." November 23, 1838, al. fi. fa. returned, "levied on personal property." July 14, 1840, ven. ex. returned, "levy stricken off by agreement." January 20, 1841, al. fi. fa. returned, "levied on land," part of the land levied on being that in dispute. March 10, 1841, ven. ex. returned by sheriff, "land sold to Daniel Kelsey for $300," and Kelsey received the sheriff's deed for his purchase, dated 17th June, 1841.

Pending these proceedings by Kelsey, Starkweather, in 1840, leased this land to Sterry Kimball for six years, and Kimball took possession. On the 26th February, 1841, Starkweather conveyed all his right, title, and interest in the land in question to James Kimball, who took out a warrant, survey, and patent on Starkweather's improvement, from the commonwealth, for one hundred and seventy-nine acres and one hundred and twenty-five perches.

Sterry Kimball refusing to surrender possession of the land to Kelsey after his purchase of it, at sheriff's sale, he instituted proceedings before two justices to obtain possession under the provisions of the act relating to executions. Sterry Kimball made oath, that as to one hundred and ninety-seven acres he held under James Kimball, and James Kimball entered into the recognisance required under the 117th section of that act.

This recognisance being certified in the Court of Common Pleas, an issue in ejectment was joined between Daniel Kelsey, plaintiff, and James Kimball, defendant. On the trial of this issue, the plaintiff offered in evidence the alias fi. fa. of January 20, 1841, to show a levy on the land in question, and the sheriff's deed to him for the same land, to the admission of both of which the defendant objected, but the court, overruling his objections, admitted the evidence, and their admissions were the subjects of the defendant's first and second bills of exceptions.

The defendant, to maintain the issue on his part, made an offer of evidence, which is recited at length in the opinion of this court, the rejection of which, by the court below, constituted his third bill of exceptions.

The court (Conyngham, President) charged the jury. The defendant contends that plaintiff cannot recover because the waiver of inquisition remained with the attorney who confessed the judgment, and has never been filed in the prothonotary's office, and therefore that the

sale is void. To this we say, that the mere non-filing of this waiver, a note of the fact of its existence being made on the record, and again noted on the fi. fa. when delivered to the sheriff, cannot at this time avail the defendant, and we refuse, therefore, to charge you as requested by the defendant.

The defendant also asks, that upon the whole case, the court charge the jury that the plaintiff cannot recover. The court refuse so to charge, but charge you under the general undisputed fact in the cause, that the plaintiff is entitled to recover.

To this charge the defendant excepted.

*Williston,* for the plaintiff in error, relied chiefly on the invalidity of the sale by the sheriff, and of his deed, in consequence of the waiver of inquisition never having been filed in the prothonotary's office. He cited the 1st section of act of 6th March, 1820; sections 44 and 45 of the act of June, 1836; Purdon's Dig. 6th ed. 416; Overton *v.* Tozer, 7 Watts, 331; Burd *v.* Dansdale, 2 Bin. 80; and to show that the court requires a strict compliance with the act of 1836, Cash *v.* Tozer, 1 Watts & Serg. 519. Those acts seem to require a waiver to be given after execution issued.

*White,* for the defendant in error.

The right of inquisition being for the benefit of the defendant, he may, independently of the acts of Assembly, waive it at any time, and his stipulation, whether filed or not, would be binding on him, and could not be taken advantage of by a stranger to the judgment. Gibbs *v.* Neely, 7 Watts, 305. On proceedings to recover possession under the act of 1836, even if there had been no waiver filed, or no memorandum of one on record, the defendant could not set it up as a defence, the only matter at issue being the title averred by the defendant in his affidavit. Hall *v.* Henrie, 2 Watts, 147; Brown *v.* Gray, 5 Watts, 17; Brownfield *v.* Braddee, 9 Watts, 149.

The agreement which the defendant offered to prove, as contained in his third bill of exceptions, was a nudum pactum, without any consideration to support it. It would not have availed the defendant in an issue on the judgment of Kelsey *v.* Starkweather, much less one who is not a party to that judgment, against the purchaser at sheriff's sale of Starkweather's property, sold by execution issued on it, without objection, and in the absence of application to open it and let the defendant into defence. Besides, the principle of the cases before cited, excludes all evidence of this kind.

*Knox,* on the same side.

*Williston,* in reply.

Q 2

The opinion of the court was delivered by BURNSIDE, J.

The holding of an inquisition, to inquire whether lands levied on will condemn or extend, is intended for the benefit of a defendant. Where he wishes to save costs, he might waive the inquisition, and the practice of waiving inquisition existed, in various ways, prior to any legislation upon the subject.

In the northern counties, the waiver was early introduced into the warrant of attorney, to confess judgment. The bond and warrant was occasionally filed, but more frequently the attorney confessed a judgment, and in that confession pursued his warrant, and placed the waiver on the record. The acts of 1820 and 1836 were only declaratory of the existing practice. They introduced no new principle, but only tended to regulate and produce uniformity in the practice.

The confession of judgment, in the case of Kelsey v. Starkweather, on which the land in question was sold, contained in the record a release of errors, and a waiver of inquisition. This the prothonotary was authorized to state in the confession of judgment on the record, by virtue of " the power contained in a certain sealed promissory note, (as it was called,) bearing date the 28th day of October, A. D. 1837."

The waiver was entered on the record, and endorsed on the fieri facias, on which the levy was made. Upon the return of the fieri facias, a venditioni exponas issued, the land was sold, and the deed duly acknowledged.

The admission of this deed in evidence is assigned for error.

In Overton v. Tozer, 7 Watts, 333, it is held, that the act of Assembly, of the 16th June, 1836, sect. 45, authorizes the sheriff to sell lands on a fieri facias, without proceeding to inquisition and condemnation, where the party, by writing filed in the proper court, dispenses by waiver of the right of inquisition. In that case, the defendant signed an instrument of writing, previous to the advertisement and sale, which he delivered to the sheriff, who returned it, with his writ, and this was held a sufficient waiver.

There is no form of waiver prescribed; and the only inquiry is, was there one? if so, the deed poll of the sheriff, duly acknowledged, will transfer the title.

Second error.—The plaintiff below had given evidence that John Starkweather was the first improver; that he commenced a bonâ fide settlement and improvement in 1817, and continued the same without interruption, until he leased the premises in 1840, to Sterry Kimball, who entered on the land, and resided upon it up to the time of the trial of the cause.

The defendant gave in evidence a deed from John Starkweather, to himself, dated February 26th, 1841, for the consideration of $100. After he had obtained this conveyance, (on the 1st March, 1841,) he took out a warrant for the one hundred and ninety acres in dispute. On the 5th March, 1841, a survey was made on the ground; and on the 29th March, 1843, the Commonwealth granted him a patent.

After Kelsey obtained his sheriff's deed, he gave notice, on the 23d June, 1841, to Sterry Kimball, to deliver up the possession; and on the 11th October, 1841, he commenced a proceeding before two justices. Sterry Kimball made oath, that he held the premises under James Kimball, the defendant in this ejectment. James Kimball, the claimant, entered into recognisance. The justices certified the case into the Common Pleas, where the defendant offered to prove, "that before the execution of the lease from John Starkweather to Sterry Kimball, it was *verbally agreed,* by and between Kelsey, Starkweather, and Sterry Kimball, that Kelsey should give time to Starkweather, to pay the amount due to Kelsey, until the rents, according to the terms of the lease, should fall due; and that Kelsey agreed, that he would not proceed against Starkweather, on his property, by execution, but receive his pay from the avails of the rent, as it fell due, by the terms of the lease; that previous to the agreement, Starkweather had delivered to Kelsey thirty-seven and a half bushels of wheat, in consideration of suspending all proceedings against him, and receiving his pay from the avails of the lease; that thereupon, the lease was executed by Starkweather and Sterry Kimball, in the presence of Kelsey; that Kelsey received $50, in part of his demand against Starkweather; that Sterry Kimball moved on the premises in March, 1840, and made improvements—finished the house the first year, at an expense of $100, and that James Kimball made a parol lease to Sterry Kimball, after the money was paid, and at and before the execution of the lease from Starkweather; that Kelsey agreed to this, and that Kimball should not be disturbed in the possession during Starkweather's lease; and of all this James Kimball gave notice, at the sheriff's sale."

The judge rejected the whole of this offer, and this is assigned for error.

If there was any agreement between the parties before the sale, it should have been brought before the court on a motion to set aside the fieri facias and levy. Both the Kimballs claimed under the defendant in the execution; one as tenant, the other as purchaser, subsequent to the judgment. In order to stay the proceedings before the justices, Sterry Kimball had to swear, that he did not come into the possession

of the premises, and did not claim to hold the same, under the defendant in the execution, but in his own right, or under a title derived to him from Starkweather, before the judgment, under which the sale took place. Act of the 16th June, 1836, sect. 94. It was manifest on the trial, that the affidavit made before the justices was unfounded, and that the evidence offered was inconsistent with the affidavit and claim of title, in the proceedings before the justices. The court were therefore right in rejecting it.

Judgment affirmed.