65h 99
40 Mis 474

EMILY O. BUTLER AND OTHERS, RESPONDENTS, *v.* ANDREW H. GREEN AND OTHERS, AS EXECUTORS AND TRUSTEES OF WILLIAM B. OGDEN, DECEASED, APPELLANTS.

*Will — disposition of real property situate in a foreign State — equitable conversion — discretionary power to sell given to executors — a failure to reinvest the proceeds — lex loci rei sitæ — money representing sales of land in foreign States.*

William B. Ogden died in the city of New York possessed of personal property, and also of a large amount of real estate situate in the States of Illinois and New Jersey, leaving a will by which the title to all his property was vested in his executors and trustees for certain purposes, for two lives in being, and thereafter the estate was devised to the same parties who were the beneficiaries under the trust. He authorized his executors and trustees to sell from time to time, in their discretion, such parts of his lands as they deemed advisable, and they were directed to treat the whole property as divided into a certain number of shares, and to pay over the rents and profits and the proceeds of any sales of real estate which they did not think it advisable to reinvest to the beneficiaries named in the will.

One share and a half was devoted to " charitable uses," to be selected by the executors and trustees; and a portion of this, in the alternative, was to be given

to needy heirs. The executors and trustees sold lands in Illinois and New Jersey, and deposited in a bank in New York, and mingled with other moneys of the estate, a sum of money which represented the share and a half set apart for charitable uses.

The bequest to charitable uses, although void in New York, was valid in Illinois and New Jersey.

In an action brought by certain of the next of kin to reach this fund arising from the sales of land in Illinois and New Jersey, in which it was alleged that Ogden died intestate as to it:

*Held,* that the action was not maintainable.

That the intention of the testator, as it appeared from the will, must govern, and that the will must be construed as the estate existed when the testator died.

That, by the terms of the will, there was no equitable conversion of the real into personal property at the death of the testator, and that no such direction would be implied.

That a discretionary power to sell, given to executors and trustees, could not have such an effect.

That when they sold land under the power the proceeds still remained real estate.

That, as a general rule, the doctrine of equitable conversion was properly applied to sustain bequests, and not to invalidate them.

That the fact that, after selling, the executors and trustees had not again invested the proceeds, did not change the property from real to personal estate.

That the question of conversion should be determined by the laws of Illinois and New Jersey, and not by the laws of the State of New York, and that the *lex loci rei sitæ* governed.

That where, in such a case, the money representing the property sold is brought into the place of the testator's domicile the foreign law must be applied to determine its disposition.

That the trusts which were valid in the other States were valid in New York, as to the proceeds of sale of lands in such other States.

That the trusts which were void under the laws of the State of New York were void only as to real and personal property situate in that State.

APPEAL by the defendants, Andrew H. Green and Marianna Ogden, as executors of and trustees under the will of William B. Ogden, deceased, and by Emily O. Wheeler, individually and as executrix of Emily B. Wheeler, deceased; Julia W. Tiffany, Eleanor W. McClurg, Caroline W. Schwab, Laura Wheeler, William O. Wheeler, Frances E. Ogden, individually and as trustee under the will of Mahlon B. Ogden, deceased, for William B. Ogden, Bernon Ogden and Frances W. Bradley; William B. Ogden, Anna O. West, Caroline O. Jones, James S. Norton and Louis B. McCagg, as trustees under the will of Caroline O. McCagg, deceased, for Louis B. McCagg; Caroline O. Jones and Frances O. Jones, as trustees

under the will of Caroline O. McCagg, deceased, for Alexander M. Jones, Julia H. Jones and William E. Jones, children of William O. Jones, deceased; Caroline O. Jones, Mahlon O. Jones and James S. Norton, as trustees under the will of Caroline O. McCagg, deceased, for Mahlon O. Jones, from the judgment of the Supreme Court in this action, entered, after a trial at the New York Special Term, in the office of the clerk of the city and county of New York on the 8th day of January, 1892, construing certain parts of the will of William B. Ogden, deceased,

*D. G. Rollins* and *Mornay Williams*, for the executors, other than W. O. Wheeler, appellants.

*William Allen Butler* and *Willard Parker Butler*, for plaintiffs, respondents.

*Frederic Jesup Stimson*, for W. O. Wheeler, respondent.

*Edward W. S. Johnston*, for Alexander McKay Jones, respondent.

*D. Seymour*, for E. B. Sheldon, respondent.

BARRETT, J.:

Although the record and briefs are quite voluminous, the practical question presented upon this appeal is in a narrow compass. That question is, has intestacy resulted as to certain moneys which the testator's executors have derived from the sales of lands in the States of Illinois and New Jersey, which moneys have been brought into this State and here mingled with other moneys of the estate?

Mr. Ogden died in this city, and as to the personal property of which he was then possessed the law of his domicile governs. All questions with regard to his real estate must, however, be determined by the *lex loci rei sitæ*. It appears that Mr. Ogden in his will made certain provisions for charitable uses which are invalid under the laws of this State, but which are valid under the laws of Illinois and New Jersey. He left real and personal property in this State, and a large amount of real property in the States of Illinois and New Jersey. A part of the real property in these other States having been sold by the executors under a discretionary power conferred upon them by the will, and the proceeds applicable to such

charitable uses having been brought into this State and mingled here with other moneys of the estate, the plaintiffs claim that the *lex loci rei sitæ* no longer governs, and that the law of the domicile should now act upon these moneys as personal property illegally bequeathed.

The solution of this question depends primarily upon the intention of the testator. Did he purpose that the attribute of his real property in Illinois and New Jersey should depend upon the will of his executors? The presumption in general is, that a testator does not intend the nature of the property to depend upon the option of the person through whom the conversion is to be effected. (Williams on Executors [6th ed.], Perkin's note, 763.) We must, therefore, look at the entire will to see if this presumption is, in the present instance, rebutted. In the first place, we find that the title to all his property is vested in the executors and trustees for certain trust purposes. They are to hold the property during a period not exceeding two specified lives in being. Upon the termination of these two lives, the testator " gives, devises and bequeaths " all the estate so vested in his executors and trustees to the beneficiaries under the trust. Thus, these beneficiaries — even as to the property in this State — took a legal estate in the lands subject to the execution of the trust. (1 R. S., 729, § 61.) The lands are devised to the trustees for trust purposes, and upon the termination of the trust they go to the beneficiaries. The intention so far would seem to be to preserve the legal characteristics of the property throughout the trust period, and upon its termination to turn over the *corpus* in its original character. The ultimate devise, although the testator knew that the property might during the trust term be varied in fact, is specifically of the estate from which the executors and trustees " shall theretofore have received the rents, issues and profits." Express authority is also given to the executors and trustees to hold, manage and take care of the devised property, to collect and receive the rents, issues and profits thereof ; to lease any portion of the estate for any period not exceeding twenty-one years ; to pay and discharge all taxes, assessments and mortgages thereon ; to renew such mortgages ; to keep the property in repair and, with the consent of the testator's wife, to improve and develop it. They are also authorized " to sell and dispose, from time to time, *in their discretion,*

of such parts and parcels of the lands and premises, and of the other property devised and bequeathed to them, as they, or a majority of them, *shall deem advisable.*" They are directed, by the third article of the will, to treat all the property so devised and bequeathed to them as divided into twenty shares or portions, and at least once in each year, "to use, apply and pay over all such rents, issues, profits and income thereof, *and all net proceeds of sales made pursuant to the authority hereinbefore granted, which they shall not deem advisable to re-invest,* and which may be available from time to time for distribution to legatees, to the persons and in the proportion following. Eighteen and one-half shares are given to individuals named, and the remaining one and one-half shares to such charitable uses as the executors and trustees may select, with the proviso that they may apply not exceeding one-half share out of this one and one-half shares, when not applied to charitable uses, to the use of all or any of the heirs who *they may deem in need or worthy of and entitled to receive the same.* They are, however, authorized to invest and reinvest the moneys arising from any such sales, and, as above pointed out, they are only to distribute the proceeds of such sales in case they do not deem it advisable to re-invest them. The final disposition of the *corpus* of the estate upon the termination of the trust is provided for in the sixth article of the will. This follows the third article in all essential particulars. The language of the gift over is as follows:

" I give, devise and bequeath all and singular the real and personal estate of which my said executors and trustees shall theretofore have received the rents, issues and profits, and all the rest, residue and remainder of my property and estate, whatsoever and wheresoever, not herein otherwise specifically devised or bequeathed, in, to and amongst the beneficiaries under the trusts created by this will, in such manner that *the parties theretofore receiving the income only shall receive and become vested with the estate and property out of which such income arose in the same relative shares and proportions in which they were entitled to said income.*"

The testator then proceeds in the eighth subdivision of this article to specify the shares. The four shares given as income to his wife in the first subdivision of the third article he now gives in the first subdivision of this sixth article as principal to her heirs, or to

" such persons and in such manner and proportions as she shall have devised and willed."

In the second subdivision of this sixth article the testator provides for the contingency *of the vesting of six shares* in his sister's children during the lifetime of their mother. In the eighth subdivision he again refers to the charitable uses and gives one and one-half shares of the *corpus* of the estate to such charitable uses as shall have been appointed by his executors and trustees, to receive and hold the same, and to such of his heirs, if any, as his said executors shall have designated in regard to the receipt of income from not exceeding one-half share.

It will thus be seen that the beneficiaries are substantially the same throughout; that the estate is vested in the same persons who are to be the recipients of the income during the trust term; that these persons *take vested remainders* subject to the execution of the trust; that no words were used expressive of an intention to change the character of the real estate, and that no such change was necessary to effectuate any of the purposes of the will. It is entirely clear that no equitable conversion was effected *at the death of the testator*. There is, in fact, no express direction in the will to sell at any time. Everything on that head is left to the discretion of the executors. They are to sell only if they deem a sale to be advisable. It is not a question of discretion with regard to time, place, amount or other conditions, but an absolute discretion with regard to the act. Nor was a conversion of the whole or any part of the real estate necessary to accomplish the purposes expressed in the will or to effectuate any of its provisions. It follows that no direction to sell can be implied. As was held by FINCH, J., in *Scholle* v. *Scholle* (113 N. Y., 261): " In the absence of an express direction to sell, one may not be implied, unless the design and purpose of the testator is unequivocal, and the implication so strong as to leave no substantial doubt; and so, unless the exercise of the power is rendered necessary and essential by the scope of the will, the authority is simply discretionary, and does not work a conversion."

The real question is, whether, upon the exercise by the executors and trustees of the discretion to sell, there resulted in law a change in the subject-matter of the devise. It is true that when each piece of real estate was sold there was, as a matter of fact, a physical

conversion into money; and *that* money was to be distributed *unless the executors chose to reinvest it.* But while the beneficiaries were thus to receive money, it by no means follows that such distribution should be treated as a distribution of personalty under the will. There was here no possible reason why the testator should change the quality of the real estate or direct the distribution of its proceeds as personalty. There was no question between heirs-at-law and next of kin; no question as to who should take dependent upon the legal character ascribed to the property. Whether these proceeds be treated as real estate or as personal property, they go in precisely the same direction; and the only effect of treating them as personalty is to invalidate the gift of one and one-half shares to charitable uses. Thus the contention is that the testator gave his executors continuous power, at any time during the period of the trust term, to frustrate his own intention and to bring about intestacy. Such a construction should certainly not be given to the will if it can possibly be avoided. The general rule is that the doctrine of equitable conversion is invoked only to sustain a bequest, not to overturn it. Another general rule is that nothing is regarded in equity as done but what ought to be done. (1 Story on Eq. Jur., §§ 649, 790.)

It has accordingly been held that the court will not declare an equitable conversion to have taken place by implication if the disposition of the fund would render the provision of the will void. (*Bonard's Will*, 16 Abb. Pr. [N. S.], 128.) See, also, note to *Walker* v. *Denne* (2 Ves., Jr., 170), where it is said that equity will not exert one of its most peculiar powers in impressing personal property with the character of land to bring it within the reach of escheat.

In our judgment there is nothing in the will under consideration which would justify the extreme construction contended for by the respondents, or which would work the result found by the Special Term. On the contrary, everything in this will points to the retention of the quality and character of the estate devised. There was, as already pointed out, no necessity for a conversion, nor for a change in the subject-matter of the devise. The executors might have retained every foot of land of which Mr. Ogden died seized until the termination of the two lives upon which the estate was limited. Under the will the beneficiaries, as we have seen, have

vested remainders in the entire estate, subject to the execution of the trust. If the property were not sold pending the trust term, they would, at its termination, certainly take the real estate in specie. If it were sold pending the trust term, the intention plainly was that they should take its representative in money. The character of the estate was not to be changed by the sale, nor by its receipt in another form. Whether the *corpus* went to the beneficiaries in specie at the termination of the trust, or whether such *corpus* was in part anticipated by intermediate sales, the intent was clearly the same. It was to give these beneficiaries *their substantial interest in the real estate.* That substantial interest was not affected by the trust fee, nor was its character changed by intermediate variation in the *corpus* of the estate, even if such variation were accompanied by a provision for distribution prior to the termination of the trust. If the executors had reinvested the proceeds of these sales, there cannot be a question but that such reinvestment, although in bonds, would have formed part of the original trust estate and would, in equity, have remained land. (*Scholle* v. *Scholle, supra ; Matter of McComb,* 117 N. Y., 378.)

The plaintiffs' contention is necessarily reduced to this — that the mere incident of a failure on the executor's part to reinvest effected a conversion into personalty and worked intestacy as to the money not reinvested. We cannot assent to such an extreme proposition. It is supported by nothing in the will itself expressive of such a purpose. It is, in fact, antagonistic to everything which we find in that instrument, and it is contrary to the well-settled rule that " where land is devised as real estate, and, either by the direction of the testator himself, or by operation of law, such real estate is converted into money for the purpose of better investment, *or for any other purpose consistent with the design and purpose of the ultimate destination to which the real estate was appropriated,* there the money is substituted for and stands in the place of the devised real estate." (*Holland* v. *Cruft,* 3 Gray, 163 ; see, also, *Matter of McComb, supra.*) We think the beneficiaries took the proceeds of the sales of lands in Illinois and New Jersey not as a bequest of personalty, but as a part of the devised estate. They took these proceeds just as they would ultimately have taken the subjects of reinvestment had the proceeds of sales been reinvested, and just as

they would ultimately have taken the lands themselves had the power of sale not been exercised. (See *Wood* v. *Keyes*, 8 Paige, 365 ; *Matter of McComb*, *supra* ; *Wright* v. *Trustees*, – Hoff., 202, 220 ; *Grimwood* v. *Bartels*, 46 L. J., Ch. Div., 788.) And the same result follows as to such charitable uses as the executors and trustees may select and appoint.

We have discussed this question of conversion as though it were governed solely by the law of this State. That is, we have considered it so far as to determine whether the law of the domicile should act upon the moneys which have been brought into this State. We think, however, that the question is one which should more appropriately be determined by the law of Illinois and New Jersey. It is not only the title to real property which is governed by the *lex loci rei sitæ*, *but also the effect and construction of the instrument conveying it.* Thus the doctrine applies not merely to what is actually immovable, but to what may be deemed to partake of an immovable or real nature by the law of the locality. Servitudes, easements, rents and other incorporeal hereditaments and interests in and appurtenances to land come within the legal definition of land as subject to the *lex loci rei sitæ*. (Story on Conflict of Laws, § 464 ; *Levy* v. *Levy*, 33 N. Y., 97 ; *Chapman* v. *Robertson*, 6 Paige, 627.)

Whether a trust created by a will as to realty situated in another State is valid or not can only be determined by the courts of that State. (*Knox* v. *Jones*, 47 N. Y., 389.) This case holds that, although real and personal property be given by the same clause in a will, and upon the same trust, they are severable, and that the validity of the bequests is to be determined by the law of the domicile, while the validity of the devises is to be determined by the *lex loci rei sitæ*. It conclusively appears in the present case that the trust as to the lands in Illinois and New Jersey is valid under the laws of these States. And it is thus established that the testator died testate as to these lands. Whether the exercise of the discretionary power of sale given to the executors, and the further exercise of the option not to reinvest the proceeds, operated to change the subject-matter of the devise, depends upon the construction to be given to the instrument which passed the title to the lands. The intention of the testator is to be gleaned from this instrument —

that is, from the will; and the courts of the locality have jurisdiction to construe the instrument and to determine all questions which may arise with regard to the title to the property and the rights of the devisees with respect thereto. These questions should be determined by the courts of the locality so long as the subject-matter, whether in the form of real estate or its money representative, is within. its jurisdiction. Where, however, such money representative has been brought within the jurisdiction of the domicile, its courts should regard the laws of the locality and determine the questions thrust upon them in accordance with such laws.

Now, it is doubtless the fact that, had these moneys remained in the States of Illinois and New Jersey, no question could have arisen with respect to the validity of the trusts for charitable uses, and that the moneys in question would there have been treated as properly applicable to such uses. The trust is there valid and its validity is not impaired by the sale of the real estate. It would be strange, indeed, were this condition of things to be completely reversed by the mere incident of a deposit of these moneys in one of the banks of this city without being ear-marked or otherwise identified as the proceeds of the sales of such Illinois and New Jersey real estate.

For that is apparently what it comes to. The attack on the trust commences at the point when the executors decided not to reinvest the proceeds of the sales and when these proceeds were brought into this State and mingled with other funds of the estate. The sequence of deduction in support of the judgment are substantially these: As the *lex loci* governed with respect to the real property in Illinois and New Jersey, the trust in those States was valid. As there was no conversion at the death of the testator, the *lex loci* still governed and the trust was still valid. As there was no conversion even by the mere act of sale, for the reason that the executors might have reinvested the proceeds, the *lex loci* continued to govern and the trust was still unaffected. But the moment it was decided not to reinvest such proceeds, they at once took on the character of personal property, the *lex loci* ceased to govern, the *lex domicilli* took its place, the trust for charitable uses became invalid and intestacy resulted with regard to the share applicable thereto.

We cannot think that this final sequence is sound, or that the *lex loci* should be set aside in this way or at this point. We have, in fact, no doubt that if the trust remains unaffected in Illinois and New Jersey by the election of the executors to distribute the proceeds of the sales it remains unaffected here.

The respondents, while contending that our laws must operate upon the moneys within this State, also seem to claim, somewhat inconsistently, that the validity of the trust as affecting lands in other States, and the effect of the physical conversion of such lands can only be determined by the courts of those States, and they say that the Special Term properly refused to consider these latter questions. But the fact is otherwise. The Special Term *did* consider these questions, and gave judgment in the plaintiffs' favor as against the validity of the trust in question. In the first, second, third, fourth and fifth paragraphs of the judgment we find express references to " the proceeds of sales of land *wheresoever situated,* and which proceeds are held by the executors and trustees of said will for distribution to charitable purposes." The judgment is that the provisions of the will having in view the gift of one and one-half shares to such charitable uses as the executors and trustees should select, " so far as they embrace or attempt to dispose of these proceeds, are illegal and void," and the executors are directed to account therefor and to distribute such proceeds as in case of intestacy.

The executors have not come into court asking affirmatively to have this trust validated. They are simply defending the trust funds in their hands against a direct attack upon the trust itself.

It is also claimed that the defense of the executors as against this attack is not sufficiently specific, and that the finding of the learned justice, that the trust in question was valid under the laws of Illinois and New Jersey, is not supported by evidence. The respondents seem to have overlooked the eighth paragraph of the answer interposed by the executors, which expressly raises the question, and they have also overlooked the stipulation upon page 200 of the case, to the effect that " counsel on either side may refer to any of the reports of judicial decisions in the courts of New Jersey, Illinois, Michigan and Wisconsin in the same manner as if they were distinctly put in evidence." These decisions were referred to below, and they are referred to again in the appellant's points. And

they abundantly justify the finding of the Special Term. We think the judgment was right with regard to property in this State; and that the provisions of the will as to charitable uses, and also as to heirs whom the executors may deem needy or worthy of and entitled to one-half share, are invalid so far as these provisions attempt to dispose of property, real or personal, in this State. As to this last question, that is, as to needy heirs, we need only say that we agree with the views presented by the respondents, and that we do not deem the question worthy of special consideration.

But as to the proceeds of sales of lands in other States, we think the judgment should be modified by striking out all that is decreed with reference thereto. As to the one and one-half shares of the net rents of real property in Illinois and New Jersey, and of the net proceeds of the sales of lands in those States, the court should make no decree, but should suffer such shares to remain in the hands of the executors and trustees that they may be applied by them in case, during the continuance of the trust, they shall see fit to so apply them, to the charitable purposes contemplated by the testator in the eighth subdivision of the third article of his will. And this result is not, and cannot be, affected by any act of the executors with regard to the deposit of such proceeds or the manner in which they are held.

The costs were charged upon the funds in the executor's hands to the credit of the trust as to charitable uses. This was proper so far as these funds were made up of the proceeds of sales of property in this State. But these funds, so far as they were made up of the proceeds of sales of Illinois and New Jersey lands, should not be charged with such costs. It is not clear from the evidence whether the entire fund in question resulted from sales in these other States. The proper course, therefore, is to reverse the judgment as to these costs and allowances without prejudice to a further application therefor when the final judgment is rendered.

The judgment appealed from is interlocutory, and as now modified the reference ordered will necessarily proceed upon different principles and may result in a different judgment as to costs. Upon the coming in of the report either party may move for final judgment, and upon such motion apply for costs and allowances as they may be advised. The costs of this appeal may abide the event.

That is, any party to whom costs are finally granted may have costs of this appeal payable in the same manner as the costs of the cause are directed by the final decree to be paid.

O'BRIEN, J., concurred.

VAN BRUNT, P. J. :

I concur in the opinion of Mr. Justice BARRETT upon this appeal. It seems to me that the question as to the validity of the provisions of a will must be determined by the conditions existing at the death of the testator, and that nothing that an executor can do subsequent to such death can either validate or invalidate the devises contained in the will. If there is a direction contained in the will that the real estate shall be converted into personal property, the will is construed as though the conversion had taken place as of the time of the death of the testator. But where the power of sale is simply discretionary in the executors no such rule applies, and the will must be construed as the estate existed at the time of the death of the testator. It certainly would be an anomalous condition of the law if an executor could, by changing, under a discretionary power of sale, real estate into money, defeat a devise contained in a will.

It is the settled policy of the law to treat the property of a testator as being of the kind left by him until it reaches some person having an absolute power of disposition. Thus, where real estate in which infants have an interest is sold, the proceeds of the sale are treated as realty until the infant arrives at maturity, and thus has an absolute power of disposition.

It is certainly not the rule that where a person dies leaving a will devising his personal property and real estate to his executors in trust, creating an intermediate estate, and giving his executors a discretionary power of sale, and upon the termination of the intermediate estate bequeathing his personal property in one direction and devising his real estate in another, if the executors exercise the power of sale in respect to the real estate, the devisees of what at the death of the testator was real estate, are thereby deprived of the provision made for them in the will. So, in the case at bar, the devise having been valid as to the real estate at the death of the testator, the power of sale being merely discretionary, it was not

possible for the executors, by the exercise of that power of sale, to defeat the intention of the testator; more particularly so, as the proceeds of sale are expressly disposed of to the same beneficiaries as the real estate had been by the will. I think, therefore, that it is clear that the proceeds of real estate, under such circumstances, must, for the purposes of distribution, and for the purpose of determining as to the validity of devises contained in the will, be treated as though the power of sale had never been exercised. If not, the executors, simply because the testator has given to them a discretionary power of sale, would be empowered to defeat absolutely devises which would otherwise have been valid. It seems to me that the mere statement of such a proposition indicates what the answer thereto must be. It is conceded, substantially, that if the proceeds of sale of the lands in Illinois and New Jersey were reinvested in lands in said States, that such proceeds would retain the legal character of land, and this court should not interfere with the disposition thereof. This being the case, the result of holding that by a sale the executor could defeat the devise, and by reinvesting the proceeds of sale he could reinstate the devise, would give the executor power to play battledore and shuttlecock with the trusts provided for by the testator. Whether the beneficiaries should take or not would depend upon his whim, and not upon the provisions made by the testator in his will.

Judgment modified as directed in opinion, and as modified affirmed.