curity about which he made no inquiry, upon the note of a man of whose financial responsibility he confesses that he knew nothing—all the surrounding circumstances—are sufficient to cast such a cloud over the defendant's title that he was undoubtedly very willing to leave the case upon the charge of the court, which precluded a recovery by the plaintiff except upon the proof both of the fraud of Charles Krack in obtaining the bill of sale from his mother to the corporation, and upon proof that Charles Krack had feloniously abstracted these notes from the plaintiff. Upon his motion for a new trial, the defendant made no complaint that the question of his bona fides had not been submitted to the jury. Having been content to rest his case upon the charge of the trial court as it was made, and having been defeated, he cannot upon his appeal be heard to urge that another question should have been submitted to the jury, which, if resolved by the jury in his favor, would have entitled him to a verdict. This is not a case where the court in its plenary power should grant a new trial for lack of full presentation of the case through inadvertence of counsel. The defendant was represented by one of the ablest and most experienced members of the bar of the state, and there is little doubt that, if any question was passed over by the court, it was passed over by the consent of defendant's counsel, and not by inadvertence.

Several exceptions are urged to the rulings of the court in admitting and excluding evidence. The memorandum by the surrogate's clerk upon the back of the petition of the plaintiff in her application for letters testamentary was properly excluded as hearsay evidence. The testimony of the physician as to the condition of Sarah Krack at and about the time she executed this bill of sale was properly admitted upon the waiver of professional secrecy by the plaintiff as the executor of Sarah Krack. The testimony of Nash as to what occurred at the time of the attempted execution of the power of attorney was admissible as part of the res gestæ, as it appears that the bill of sale of the bathhouse to the Knickerbocker Bathing Company in question was afterwards executed upon the statement of Charles Krack that it was the same paper which was discussed with Nash at this time. We have examined the other exceptions to which reference is made, and find no error which calls for the reversal of this judgment.

The judgment and order should therefore be affirmed, with costs. All concur; HOUGHTON, J., not voting, not being a member of this court at the time the decision is handed down.

---

(47 Misc. Rep. 567)

## In re HULL'S ESTATE.

(Surrogate's Court, Westchester County. June, 1905.)

TAXATION—TRANSFER TAX—REAL ESTATE—POWER OF APPOINTMENT.

    Decedent's mother, who died in 1874, devised an interest in the estate of her father, which at the time of her death was real property in the state of New Jersey. The will contained no words creating an equitable conversion. She left a share of her estate in trust, the income to be paid to her son during his lifetime, with a power of appointment to him in the remainder. *Held,* that a transfer thereof, which became operative

by reason of his exercise of such power, was not taxable under the transfer tax law, though he was a resident of the state at the time of his death and his will was proved therein.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 1685, 1701.]

In the matter of the appraisal of the estate of Wager J. Hull, deceased. From the decree entered on the report of an official transfer tax appraiser, Ida M. Hull appeals. Reversed.

See 95 N. Y. Supp. 819.

Albert Ritchie, for appellant.
Frank M. Buck, for respondent.

SILKMAN, S. An appeal is taken from the decree entered upon the report of the official transfer tax appraiser adjudging a tax upon the transfer in favor of Ida M. Hull, effected by the exercise of a power of appointment vested in Wager J. Hull by the will of his mother, Caroline C. Hull, who died in January, 1874. The facts to be gathered from the record show that Richard M. Cooper, father of Caroline C. Hull, died a resident of the state of New Jersey, leaving a will under which she became entitled to an undivided interest in his estate, which consisted of real property situated in New Jersey. Before such realty left by him had been sold or divided, Caroline died, and the estate left by her consisted of an undivided interest in the real property of her father. Caroline was a resident of New York county, and her will was proved before the surrogate thereof, who issued letters testamentary to John W. Wright, nominated as executor. Her will was then probated in New Jersey, and letters testamentary were issued to Wright by the orphans' court of Camden county, N. J. Wright died in 1891, without having accounted in the state of New York, and, so far as appears, without having brought any of the assets into the state of New York. Upon his death Peter B. Voorhis, a lawyer of New Jersey, was appointed successor trustee by the said orphans' court. The property which came into the hands of Wright and into the hands of his successor (Voorhis), as representatives of the estate of Mrs. Hull, was the proceeds of the sale of real estate left by Mr. Cooper, and consisted of cash and mortgages on New Jersey real estate, which proceeds are now and have always been in the state of New Jersey. By her will Caroline C. Hull left a share of her estate in trust, the income to be applied to the use of Wager J. Hull during his life, with a power of appointment to him as to the remainder in such share. Wager died a resident of this county, and his will has been proved in this jurisdiction.

The question is whether the transfer from the testatrix, Caroline C. Hull, which became operative by reason of the exercise of such power of appointment given to Wager J. Hull, is subject to a tax under our transfer tax law. The power to tax transfers of this character rests upon the principle that the transferee takes property either directly from a decedent or through the medium of a power, by virtue of a privilege to so take granted by the Legislature, and therefore the inquiry must be as to whether the appointee of Wager J. Hull, the donee of the power, took the property which was the subject thereof under or

by virtue of a privilege granted or extended by the laws of this state; or could such appointee take in spite of the Legislature? To apply an extreme test, would the appointee under the power take property covered by it, if such power was void under the statutes of this state? The property which passed under Mrs. Hull's will was an interest in the estate of her father, and at that time such estate was actually and physically real property in the state of New Jersey. If under his will there were provisions relating to its sale which operated as an equitable conversion, then under the authority of Matter of Mills, 86 App. Div. 555, 67 N. Y. Supp. 956, 84 N. Y. Supp. 1135, affirmed by the Court of Appeals 177 N. Y. 562, 69 N. E. 1127, it would pass under Mrs. Hull's will as personal property, assuming that the law of New Jersey is the same as the law of this state on that subject. But the will of Mrs. Hull, so far as it appears from the record before me, contains no words justifying a conclusion of equitable conversion, and I do not think that I am called upon to assume such to be the fact, nor can I assume that there had been an equitable conversion by the will of Mr. Cooper. I feel that I am bound to regard the property what it physically was at the time of Mrs. Hull's death.

It is the duty in proceedings of this character for the state authorities to establish the right to assess a tax. We are not to assume nor presume matters to sustain such right. Nevertheless, assuming that the provisions of the will of Mr. Cooper worked an equitable conversion of his realty into personalty, I still think that the appointee under the power of appointment would take without the aid of any legislation in this state and in spite of anything that its Legislature might do. The original executor and trustee under the will of Mrs. Hull was a resident of the state of New Jersey, and held the property there under letters testamentary issued by the orphans' court of the county of that state, and the successor trustee acted under an appointment of the same orphans' court, and in the latter's possession the property was at the time of Wager J. Hull's death. Such successor trustee is subject to account therefor in the court of his appointment, and no court of this state has jurisdiction over him to compel an account or a distribution of the trust estate. The probate of Mrs. Hull's will and the issuance of letters testamentary thereupon in this state I do not regard as affecting the question, for the reason that the trustee under Mrs. Hull's will took the property as to which Wager J. Hull was the cestui que trust, not by virtue of the will's probate but by virtue of the will itself; that is to say, the trustee as legatee, being in possession of the trust property, could defend title thereto at any time and in any court by proof of the execution of the will and without proof of the probate thereof in the proper Surrogate's Court. So, at the time of Mrs. Hull's death, we find her executor, as trustee, a resident of the state of New Jersey, in possession of an interest in the proceeds of New Jersey real estate then unsold, left by Mr. Cooper. This property was so held by the trustee in the state of New Jersey, under the conditions of the instrument creating the trust and subject to the decrees of the court in the jurisdiction where he lived, where he was performing his trust and where the property was actually situated. The courts of that jurisdiction must determine to whom the property belonged upon the

death of the life tenant. It is for them to say whether the power of appointment contained in Mrs. Hull's will was valid or invalid, operative or inoperative. Although the question is not free from doubt, I do not think that any statute of the state of New York would be binding upon the courts of New Jersey in determining the devolution of the title to the property.

The situs of the property of Mrs. Hull, upon her death in 1874, assuming it to be personalty, was the domicile of her trustee, which was the state of New Jersey, and it was there subject to taxation. The situs did not change until it became the duty of the successor trustee to pass the property on to the appointee under the power of appointment contained in her will. No title was in Wager J. Hull, the cestui que trust under her will (Knox v. Jones, 47 N. Y. 389), and his domicile, therefore, can have no bearing upon the question. There never had been any property prior to the death of Wager J. Hull which the state of New York could reach for the purpose of taxation. Neither could it reach the persons who held the legal title thereto; and, this being so, I am unable to see how our state can for the purposes of taxation put its heavy hand upon its transfer—not one in the ordinary sense, but a transfer pronounced so by legislative enactment solely for revenue purposes. The result reached has some, if not conclusive, support in the reasoning of Mr. Justice Barrett in Butler v. Green, 65 Hun, 99, 19 N. Y. Supp. 890.

I think that the transfer tax appraiser has committed an error, and the decree entered upon his report assessing a tax must be reversed, with costs.

Decree reversed, with costs.