CORTLANDT F. BISHOP, Individually and as Executor of and Trustee under the Will of DAVID W. BISHOP, Deceased, Appellant, *v.* BEATRICE B. BISHOP et al., Respondents.

(Submitted November 30, 1931; decided January 5, 1932.)

CARDOZO, Ch. J. Upon the decision of this cause in July, 1931, the court directed that the form of the remittitur be settled upon notice (*Bishop* v. *Bishop*, 257 N. Y. 40, 54).

Important differences have developed between the parties in interest in the attempted adaptation of the accounting decree to the new situation brought about by our ruling that the trusts are in part invalid. As to some of the differences there should be a statement of our views.

The court held in disposing of the appeal that the validity of the trusts as to personal property was governed by the law of Massachusetts, the State of the testator's domicile; that the validity of the trusts as to real estate situated in New York was governed by New York law; that under that law there was created by the testator an illegal perpetuity in respect of the first of the three shares of the residuary estate; and that by reason of such perpetuity, Cortlandt Field Bishop became on the death of Mrs. Parsons the absolute owner in fee of the real estate in New York thus illegally devised.

By the terms of the will, the trustees were empowered in their discretion to use the personal estate in the improvement of real estate then included in the trust or in the purchase of other real estate in the city of New York.

The trustees (Mrs. Parsons, now deceased, and the plaintiff, Cortlandt Field Bishop) did, so it is said, improve the New York real estate, part of the first residuary share, and acquire additional New York real estate, allocated to that share, through the use for those purposes of the personal estate.

The plaintiff takes the position that by force of this application of the personal estate, he turned it into realty; that by so doing he succeeded in divesting or destroying the remainders, vested and contingent, bequeathed to the issue and to the charities (257 N. Y. at p. 50); and that he is for all purposes the absolute owner both of the newly acquired real estate and of the accretions to real estate

previously acquired, free from a duty to account to any one therefor.

We are unable to approve the argument. The will, as we have pointed out (257 N. Y. at p. 52), was either valid or invalid at the time it took effect, the date of the testator's death. In respect of the New York real property then included in the estate, the will was then invalid in so far as it suspended the power of alienation for more than two lives in being. In respect of personal property it was valid, for it did not create an illegal perpetuity under the law of Massachusetts. The remainders, vested and contingent, legal and equitable, appointed by the testator in respect of his personal estate, were immune from destruction by any act of the plaintiff, and surely so by any act for the aggrandizement of his own interest at the expense of the beneficiaries whom he was under a duty to protect. If any other conclusion were accepted, he might have turned the whole share into real estate, though there had been none at the beginning, and thus taken the whole from others and given it to himself. A trustee who exercises a discretionary power of sale or of investment does not in so doing add anything to or detract anything from the validity or invalidity of the gifts effected by the will (*Butler* v. *Green*, 65 Hun, 99, 102).

We are not forgetful of the fact that the statutes of New York governing perpetuities in respect of real estate are the expression of a local policy (*Carrier* v. *Carrier*, 226 N. Y. 114, 122), which may not be evaded by the mere device of purchasing the real estate with moneys belonging to non-residents. The investment being made, the power of alienation will be governed by our laws. This does not mean, however, that the trustee will be relieved in such circumstances from a duty to account to his beneficiaries, the equitable owners of the personal estate, whose moneys will otherwise have been diverted to his use. The land may be sold whenever the period of limitation permitted by our laws will authorize

a sale, but the proceeds to the extent that they represent an investment of the personalty will become part of a trust under the law of Massachusetts, and must be accounted for as such. If personal property has been used in the improvement of the real estate, the result will be ·a lien to be measured by the increment of value. If personal property has been used in the purchase of additional real estate, the proceeds of the sale must be accounted for to those contributing the moneys by which the investment became possible. In the meantime, the trustee will be accountable for the rents and profits in submission to the same equities that would affect him if the land so improved or acquired had already been sold and reconverted into money. The policy of the statute of perpetuities is not violated if there is capacity to pass to a purchaser an absolute fee in possession, a fee undiminished and unaffected by any trust or limitation. The policy has nothing to do with the disposition of the proceeds in a case where the land has been acquired after the death of the testator, and acquired by the investment of personalty subject to a foreign law (*Cross* v. *United States Trust Co.*, 131 N. Y. 330; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485, 496; cf. Goodrich on Conflict of Laws, p. 336). The situation might be different if the investment had been made with moneys subject to our law or had been made in execution of a mandatory power (*Robert* v. *Corning*, 89 N. Y. 225, 239). The power being discretionary and the moneys before investment being part of a lawful trust created under the laws of Massachusetts, they resume their original quality, when released from the investment, and become part of a lawful trust again, to be accounted for as proceeds and no longer to be viewed as land.

We find nothing to the contrary in *White* v. *Howard* (46 N. Y. 144). The question in that case was one as to the capacity of a grantee to take, and the ruling was that this capacity, where foreign moneys were laid out in

lands within our borders, must be governed by our law. The decision tells us nothing as to the duty of a trustee who has applied the moneys of remaindermen for the enhancement of his own estate.

As to other differences between the parties, we state our conclusions without argument.

The court did not intend by its previous opinion to intimate a belief that any of the limitations of the second and third shares of the residuary estate were ineffective or unlawful.

The power of appointment conferred upon Mrs. Parsons in respect of the first share was lawfully exercised, so far as it designated Cortlandt Field Bishop as the appointee thereunder. What was held to be invalid was the provision of the will of Mr. Bishop, separable from the general power, whereby the estate so appointed was declared to be subject to a trust and to limitations for the benefit of issue and others.

The moneys withdrawn by the plaintiff from the trust and now subject to be refunded should be secured by a lien to the extent and in the form proposed by counsel for the defendants.

The lien is not superior to any inchoate right of dower belonging to the plaintiff's wife, except to the extent, if any, that the moneys so withdrawn have been used in the improvement of the real estate to which such right of dower has attached.

The court believes it inexpedient to declare with greater particularity at this time the method of adjusting the equities that may call for declaration and settlement in an action of partition, but will leave to the Supreme Court the power to dispose of such questions as they may hereafter arise.

The form of the remittitur will be settled accordingly.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.