# CUFF v. KOSLOSKY.

No. 20892.    Sept. 26, 1933.

Goode, Dierker & Goode, for plaintiff in error.

Morrie Kirschner and Disney, Wheeler & Alcorn, for defendant in error.

McNEILL, J. This case involves the confirmation of the sale of mineral rights under a mineral deed. The parties will be referred to as they appeared in the trial. The plaintiff in error, plaintiff below, J. J. Cuff, commenced an action against defendant in the district court of Pottawatomie county on March 19, 1924, to recover personal judgment on some notes. An attachment order was issued against the defendant, and an undivided one-half interest in the oil, gas, and mineral rights in a certain tract of land situated in said county was attached and appraised. Service was obtained upon said defendant by publication, and on June 2, 1924, the trial court rendered a default judgment against

said defendant, sustaining the attachment and ordering said property attached and sold. The property was thereafter sold after said judgment, without appraisement, at a sheriff's sale to plaintiff, and on July 14, 1924, upon motion of plaintiff, the court entered an order confirming said sale, and ordered that the sheriff of said county make and execute to said purchaser at said sale a good and sufficient deed for said property sold.

On February 28, 1927, said defendant filed his amended motion to vacate and set aside said judgment and order confirming said sale. The plaintiff filed a motion to strike the amended motion. The same was overruled. A demurrer was then interposed to said amended motion on May 17, 1929. The same was overruled. On admission in open court by the defendant that the principal judgment sustaining the attachment was valid, the plaintiff elected to stand upon said demurrer, and the court rendered judgment vacating the sale, order of confirmation, and canceling the sheriff's deed. The plaintiff in his petition in error presents the following specifications in error, to wit:

"(1) That said court erred in overruling the motion of plaintiff in error to strike from the files the amended motion to vacate judgment and order of confirmation of sale of the defendant in error.

"(2) That said court erred in overruling the demurrer of plaintiff in error to the motion and amended motion of defendant in error to vacate judgment, sale and order of confirmation.

"(3) The court erred in vacating the sale and order of confirmation thereunder and canceling the sheriff's deed.

"(4) The court erred in not rendering judgment for the plaintiff in error herein, denying the motion and amended motion of defendant in error to set aside the sale."

In support of these specifications in error, plaintiff urges the following propositions, to wit:

"First: No appraisement of the mineral rights attached was necessary, the same not being 'lands or tenements' within the meaning of section 703, C. O. S. 1921.

"Second: The want of appraisement of the attached property, even if required by the statute on executions, is not jurisdictional, and the judgment sought to be vacated was not void.

"Third: The court erred in setting aside the sale and canceling the sheriff's deed herein for the reason that only a court of equity has jurisdiction to set aside a judicial sale after a sheriff's deed has been executed and recorded."

The defendant urges the following contentions:

"(1) That the grant of a mineral estate is both interest in real estate and a tenement, which comes within the land and tenement clause of section 703 of the Compiled Oklahoma Statutes of 1921, requiring an appraisement of tenements before a valid deed can be made.

"(2) The judgment of the court in confirming sheriff's sale was void for the want of an appraisement under execution after judgment.

"(3) Motion is proper remedy under our statutes."

The real question presented in this case is whether or not the mineral grant in question is such an interest in real estate and a tenement as to come within the classification of lands and tenements provided for in section 703, C. O. S. 1921 [O. S. 1931, sec. 450], so as to require an appraisement thereof before a valid sale of the same can be made after judgment under an execution.

Said section 703 provides that if execution be levied upon lands and tenements, the officers levying the execution shall cause the same to be appraised.

Plaintiff admits that the ownership of oil and gas rights creates an estate in land, but asserts that the Legislature has not seen fit to require an appraisement of any and all estates of land of whatsoever kind and character when sold on execution; that the mineral rights conveyed by the instrument in question are not lands within the meaning of section 703, C. O. S. 1921 [O. S. 1931, sec. 450]; that the mineral interest cannot be classified as tenements, and that section 703 has no application to mineral interests.

On the other hand, the defendant contends that the mineral deed which purports to convey unaccrued royalty is an interest in real estate, and that such interest in land comes within the applicable clause of said section 703; that, before a valid sale can be made of a mineral estate covering oil, gas, and mineral after judgment under an execution, said estate must be appraised; that this mineral grant conveyed an interest in the land so as to require an appraisement under section 703, and that it comes within the tenement class.

Plaintiff cites in reliance of his conten-

tion the case of First National Bank of Healdton v. Dunlap et al., 122 Okla. 288, 254 P. 729, whch involved a construction of section 690, C. O. S. 1921, as to whether or not an oil and gas lease was real estate within the meaning of said section 690, C. O. S. 1921, so as to give a judgment creditor a lien upon the oil and gas lease belonging to the judgment debtor. We need not be concerned in this case in the soundness of the views announced in that case, which is accompanied with strong contending views in a dissenting opinion. In this case we are considering the conveyance of an oil and gas mineral right under what is generally known as a mineral deed. The instrument in question does not appear in the record, but we think it is conceded by the briefs that this mineral deed includes all mineral rights, coal, zinc, lead, and other minerals. If this be construed as a conveyance of coal, zinc, or lead, an appraisement under the foregoing facts was necessary for a valid sale in the absence of waiver. See Hancock v. Youree, 25 Okla. 460, 106 P. 841. We are considering the instrument as dealing with oil and gas.

It is settled law that oil and gas in place are minerals, and that so long as they remain unsevered from the soil, they are a part of the realty. In this jurisdiction oil and gas, although they form a part of the corpus of the soil, the aggregate physical interest in the land, while in place, are not subject to absolute ownership separate and distinct from the soil of which they form a part. Garfield Oil Co. v. Champlin, 78 Okla. 91. 189 P. 514. Nor is the land divided horizontally as well as vertically for the purpose of separate ownership as in the case of some other jurisdictions, notably the state of California. See Graciosa Oil Co. v. Santa Barbara County (Cal.) 99 P. 483.

In the case of Priddy v. Thompson, 204 Fed. 955, cited with approval in the case of Dunlap v. Jackson, 92 Okla. 246, 219 P. 314, as authority for the rule that the owner of the land has no title to the oil and gas that might be beneath the surface, it was said:

"Oil and gas in the earth are, unlike ore and coal, fugacious and incapable of ownership distinct from the land, and a grant of the oil and gas in a tract of land is a grant of that part of the oil and gas therein which the grantee may find and capture. No title vests until the oil or gas is reduced to possession by extracting the same from the earth, and hence the lease is a grant of an incorporeal hereditament."

This court, in the case of Brennan v. Hunter, 68 Okla. 112, 172 P. 49, announced the following rule relative to oil and gas leases:

"The lessees thereby acquired a vested, though limited, estate in the lands for the purpose named in the lease, and are entitled to be protected in the exercise of their rights according to the terms and conditions of their contract. * * * The views above expressed are sustained by the great weight of authority, if not by the unanimous opinions of the courts. Petroleum Co. v. Coal Co., 89 Tenn. 381, 18 S. W. 65; Lowther Oil Co. v. Miller Sibley Oil Co., 53 W. Va. 507, 44 S. E. 433, 97 Am. St. Rep. 1027; Venture Oil Co. v. Fretts, 152 Pa. 457, 25 Atl. 732; Harris v. Ohio Oil Co., 57 Ohio St. 118, 48 N. E. 502; Carr v. Huntington Light & Fuel Co., 33 Ind. App. 1, 70 N. E. 552; Headley v. Hoopengarner, 60 W. Va. 626, 55 S. E. 744; Lindley v. Raydure (D. C.) 239 Fed. 928; Doddridge County Oil & Gas Co. v. Smith (C. C.) 154 Fed. 970; Dickey v. Coffeyville Vitrified Brick & Tile Co., 69 Kan. 106, 76 P. 398; Richlands Oil Co. v. Morriss, 108 Va. 288, 61 S. E. 762."

This court, in the case of Rich v. Doneghey, 71 Okla. 204, 177 P. 86, said:

"But with respect to such oil and gas, they had certain rights designated by the same courts as a qualified ownership thereof, but which may be more accurately stated as exclusive right, subject to legislative control against waste and the like, to erect structures on the surface of their land, and explore therefor by drilling wells through the underlying strata, and to take therefrom and reduce to possession, and thus acquire absolute title as personal property to such as might be found and obtained thereby. This right is the proper subject of sale, and may be granted or reserved. Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 P. 468, L. R. A. 1918A, 487. The right so granted or reserved, and held separate and apart from the possession of the land itself, is an incorporeal hereditament; or more specifically, as designated in the ancient French, a profit a prendre, analogous to a profit to hunt and fish on the land of another. Kolachny v. Galbreath, 26 Okla. 772, 110 P. 902. 38 L. R. A. (N. S.) 451; Funk v. Haldeman et al., 53 Pa. 229; Phillips v. Springfield Crude Oil Co., 76 Kan. 783, 92 P. 1119."

The right to capture has certain limitations. This was ably expressed by Mr. Justice Butler of the Supreme Court of the United States in the recent case of Champlin Refining Co. v. Corporation Commission of State of Oklahoma, 286 U. S. 210, 52 Sup. Ct. Rep. 559, dealing with the question of proration, as follows:

"In Oklahoma, as generally elsewhere, landowners do not have absolute title to the gas and oil that may permeate below the surface. These minerals, differing from solids in place, such as coal and iron, are fugacious and of uncertain movement within the limits of the pool. Every person has the right to drill wells on his own land and take from the pools below all the gas and oil that he may be able to reduce to possession, including that coming from land belonging to others, but the right to take and thus acquire ownership is subject to the reasonable exertion of the power of the state to prevent unnecessary loss, destruction, or waste. And that power extends to the taker's unreasonable and wasteful use of natural gas pressure available for lifting the oil to the surface, and the unreasonable and wasteful depletion of a common supply of gas and oil to the injury of others entitled to resort to and take from the same pool. (Citing cases.)"

However, an owner of land may convey, except, or reserve his right to the oil and gas beneath it. This private property right is the proper subject of sale (Rich v. Doneghey, 71 Okla. 204, 177 P. 86; Ramey v. Stephney, 70 Okla. 87, 173 P. 72; Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 P. 468); but this court appears to adhere to the theory that such a conveyance or instrument, technically at least, is in the nature of an exclusive right to experiment or explore for oil and gas, with the privilege of using so much of the surface of the land thereof as may be necessary for drilling operations, and the further right to reduce to possession the oil and gas so found from its movable deposits confined in nature's invisible reservoirs, and then, after the oil and gas have been lifted, captured, and severed from the soil and placed in the pipe line or other depository under control, the same become personalty. The title to the oil and gas in place, by such conveyance, grant, or exception, does not vest, and no ownership of the minerals in place is acquired, until the grantee finds and captures the same, although this valuable right as outlined, to wit, to obtain and reduce the oil and gas to possession, creates some kind of a property interest, or an incorporeal right in the land. Nevertheless, this character of interest is property. If this right extends for a longer period than one year, it must be in writing to come within the statute of frauds. Woodworth v. Franklin, 85 Okla. 27, 204 P. 452.

In our opinion there is a distinct difference between an oil and gas mining lease and the usual mineral deed. The usual provisions in each permit the grantee the right of ingress and egress to and from the premises for the purpose of exploring and drilling wells, and then, if oil or gas is discovered, the right to use so much of the surface of the land as may be necessary to reduce the oil and gas to possession. By either instrument, the grantee has acquired by virtue of the instrument a certain proprietorship, and an estate of some character has been vested in him by reason thereof.

Each instrument must be signed, acknowledged, and recorded to constitute constructive notice to third parties. Both affect titles to land. They are filed and recorded as such.

The undeveloped oil and gas lease is limited to a definite fixed term of years or months, and an estate so acquired by conveyance and limited to a fixed and definite term, even though a freehold, is a chattel real. It lacks indeterminate duration, and a chattel real such as an oil and gas lease passes at death to the personal representatives and not to the heirs. Duff v. Keaton, 33 Okla. 92, 124 P. 291. The usual mineral deed is broader and more comprehensive in its terms. It contains words of inheritance. It may or may not be an estate for years; it is ordinarily of indeterminate duration and not limited to any fixed time; an estate of such character is an estate of inheritance, a perpetual estate. See section 8401, C. O. S 1921. In that respect it is counterdistinguished from an oil and gas lease. It is an absolute right to the oil and gas, a quantum of the corpus of the land, but under our decisions no title to the oil and gas obtains until the same have been captured. In reality it is an absolute conveyance of these minerals in place with title vesting in the oil and gas deferred until they are reduced to actual possession, when property in them then becomes absolute. It amounts to the creation of a separate estate.

The grant under the mineral deed vests a permanent present interest in the mineral estate; but it is not practical to operate for oil and gas under a mineral deed unless the grantee acquires the right to the greater portion of the minerals. It is the ordinary, usual, and effective method to operate under an oil and gas mining lease. Under such a plan, there is usually a provision as to the payment of future rentals and unaccrued royalties in the event oil and gas are found. There seems no apparent reason why this property should not be held, conveyed, and transmitted by will or inheritance as a separate estate, especially in so far as it relates to the unaccrued rentals

and unaccrued royalties provided for in an existing oil and gas lease to which the mineral deed may be subject. See Adams v. Briggs Iron Co., 7 Cush. (Mass.) 361. Mills on Oil and Gas, p. 79, states as follows:

"Accrued royalties are ordinarily personal property, but more strictly a chose in action, but unaccrued royalties are an incident of the reversion, a part of the estate remaining in the lessor. As such the estate descends to the heirs and not to the personal representatives."

In the case of U. S. v. Noble, 237 U. S. 74, 59 L. Ed. 844, Mr. Justice Hughes, now Chief Justice of the United States, said:

"The rents and royalties were profits issuing out of the land. When they accrued they became personal property, but rents and royalties to accrue were a part of the estate remaining in the lessor."

After oil and gas have been discovered and produced from the premises under either the oil and gas lease or the mineral deed, the corpus of the land becomes changed and depleted in proportion to the amount of the oil and gas lifted, captured, and severed from the soil. The removal of a portion of the corpus of the land from its unseen mineral reservoirs is not replaceable. After this removal, depletion, or production, there has been to that extent an alienation and dismemberment of the common-law freehold estate in the land.

Section 2323, O. O. S. 1921 [O. S. 1931, sec. 1790], provides:

"The term 'real property' includes every estate, interest and right in lands, tenements and hereditaments."

Section 3560, C. O. S. 1921 [O. S. 1931, sec. 26], coming under chapter 17, "Definitions and General Provisions," provides:

"* * * The word 'property' includes property, real and personal. * * * The words 'real property' are co-extensive with lands, tenements, and hereditaments. * * * The words 'personal property' include money, goods, chattels, things in action, and evidences of debt."

Section 5250, C. O. S. 1921 [O. S. 1931, sec. 967], provides:

"The words 'land,' 'real estate,' and 'premises,' when used herein or in any instrument relating to real property, are synonyms and shall be deemed to mean the same thing, and, unless otherwise qualified, to include lands, tenements, and hereditaments. * * *"

Bouvier's Law Dictionary defines "tenement" and "land" as follows:

"In its most extensive signification, 'tenement' comprehends anything which may be holden, provided it be of a permanent nature, and not only lands and inheritances which are holden, but also rents and profits a prendre of which a man has any frank tenement and of which he may be seized ut libero tenemento, are included under this term. * * *

"Land has been held to include servitudes, easements, rents, and other incorporeal hereditaments, and all rights thereto and interests therein, equitable as well as legal; Oskaloosa Water Co. v. Board, 84 Ia. 407, 51 N. W. 18, 15 L. R. A. 296; Butler v. Green, 65 Hun, 99, 19 N. Y. Supp. 890; and to be synonymous with the terms 'real estate' and 'real property'; Black v. Min. Co., 49 Fed. 549; and to include leases for years, remainders, reversions, rent-charges, tithes, advowsons, and tithes of honor; 30 Ch. Div. 136."

Black's Law Dictionary defines "tenement" as follows:

"'Tenement.' * * * It signifies everything that may be holden, provided it be of a permanent nature whether it be of a substantial and sensible, or of an unsubstantial ideal kind. Thus, liberum tenementum, frank tenement, or freehold, is applicable not only to lands and other solid objects, but also to offices, rents, commons, avowsons, franchises, pelrages, etc."

We conclude that a mineral grant which provides for the transfer of an interest in and to the oil and gas and mineral rights lying in and under a certain tract of land, conveying to the grantee the right to dig, explore, and extract mineral from the granted premises without limitations as to time, and which purports to convey unaccrued royalties, is an alienation of a property right, a dismemberment of ownership, a creation of a separate estate, and is such an interest in land as to come within the provisions of section 703, O. O. S. 1921 [O. S. 1931, sec. 450], under the classification of lands and tenements.

Counsel for plaintiff also urges that the want of appraisement, even though required by the statute on executions, is not jurisdictional, and cite the rule announced in Cudjo v. Harris, 119 Okla. 69, 248 P. 343, in support thereof. In that case it was sought to vacate the order of confirmation of sale because the land was sold within less than six months after the entering of the decree foreclosing a mortgage in which the appraisement was waived. In the instant case no appraisement was ever had.

In the case of Cudjo v. Harris, supra, the case of Hancock v. Youree, 25 Okla. 460,

140

160 P. 841, is cited. We think the rule announced in the Hancock Case, supra, is the correct rule, and other decisions in conflict with that rule are overruled. It appears that the Hancock Case was well considered by Mr. Justice Dunn and followed the decisions and rule announced in the case of Capital Bank of Topeka v. Huntoon, 11 P. 369, by the Supreme Court of Kansas, wherein Mr. Justice Valentine exhaustively reviewed the authorities and held that where no appraisement was had after judgment on execution, the sale was void, and failure to make such appraisement was not an irregularity, but was jurisdictional. See, also, Given v. Owen, 73 Okla. 146, 175 P. 345; Johnson v. Lynch, 38 Okla. 145, 132 P. 350; Brown v. State National Bank of Shawnee, 133 Okla. 173, 271 P. 833. If the judgment is void, it may be vacated at any time on motion of a party or any person affected thereby. Section 817, C. O. S. 1921 [O. S. 1931, sec. 563].

In view of the foregoing, the judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and OSBORN, BUSBY, and WELCH, JJ., concur. ANDREWS and BAYLESS, JJ., absent.