Graves & Wells v. Long, Assignee.

---

CASE 68—PETITION EQUITY—OCTOBER 2.

# Graves & Wells v. Long, Assignee.

APPEAL FROM SHELBY CIRCUIT COURT.

1. PARTIES TO ACTIONS.—In an action to sell property held in trust for the payment of debts it is not necessary, as it is in a suit to settle a decedent's estate, to make all the lien creditors parties.

2. SAME.—While the debtor, because of his interest in the suit, is not only a proper, but necessary party to such a suit, he is not a necessary party for the purpose of passing the title to a purchaser, the title having vested in the assignee.

3. ATTORNEY AND CLIENT.—Whenever an agent or attorney accepts another employment in conflict with the interests of his first principal or client, it ends his first engagement. But there is not necessarily any antagonism of interest between a debtor and his assignee for the benefit of creditors; and while a case might arise where it would be improper for the same attorney to represent both, this record does not present it, and the consent of the attorney for the debtor to the rendition of a decree for the sale of the assigned property in an action by the assignee is binding, although the same attorney also represented the assignee.

4. JUDICIAL SALES—REDEMPTION.—The act of April 9, 1878, providing for the redemption of real estate sold under an order or judgment of

Graves & Wells v. Long, Assignee.

a court applies to all coercive sales for debt, and not merely to cases where the judgment is directly against the debtor. It, therefore, applies to a sale of assigned property made under a decree obtained by the assignee for creditors, and the debtor has such an interest as entitles him to except to the report of sale upon the ground that the requirements of the act have not been complied with.

5. SAME—APPRAISEMENT.—In no case to which that act applies can the sale be lawfully made in the absence of the appraisement for which the act provides, and its place cannot be supplied by evidence after the sale that the property in fact sold for a fair value, or more than two-thirds of any appraised value that could have fairly been placed upon it.

6. SAME—JUDGMENT.—It is not necessary that the judgment should direct appraisement to be made, as it is the duty of the commissioner to have it made without such a direction; but as the judgment in this case directed the commissioner to put the purchaser in possession at once, it, by implication, forbade an appraisement, and was, therefore, erroneous.

7. POWERS OF ATTORNEY.—The employment of attorneys did not confer upon them the power to waive their client's right to redeem his property, or any steps necessary thereto.

G. G. GILBERT FOR APPELLANTS.

Before land can be sold at the suit of an assignee in trust for the payment of debts there must be an appraisement, and the right of redemption exists as in sales under execution. (Gen. Stats., 835; Rose v. Taylor, 8 Ky. Law Rep., 182; Cantrill v. Perry's Adm'r, 7 Ky. Law Rep., 446.)

2. No decree for sale should have been made until all the debts had matured and all lien-holders were before the court. (Civil Code, 694; Faught v. Henry, 13 Bush, 471; Leopold v. Fisher, 8 Ky. Law Rep.)

3. A writ of possession should not have been granted until confirmation of report of sale. (Stamp v. Martin, 9 Bush, 289; Freeman v. Hunt, 3 Dana, 614.)

BULLOCK & BECKHAM AND L. C. WILLIS FOR APPELLEE.

Appraisement of land before decretal sale is not required where the right of redemption does not exist, and the right of redemption does not exist where there is a deed of assignment for the payment of debts unless the right to redeem is reserved in the deed. (May v. Snead, 78 Ky., 635; Wooldridge v. Jacob's Guardian, 79 Ky., 250.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

August 15, 1885, Thomas B. Graves and J. B. Wells

made an assignment of their property to a trustee for the payment of their debts. Among the assets was a valuable farm. Graves had previously conveyed his undivided half of it to his wife; but in October, 1885, she conveyed all her interest in it to the assignee of Graves and Wells for the purposes named in their deed of trust. In February, 1886, this action was instituted by the assignee for the purpose of obtaining a sale of the land to pay the indebtedness. Graves and Wells were, together with their creditors, made defendants in the petition.

March 23, 1886, a judgment of sale was rendered. It provided that the commissioner making it should immediately thereafter put the purchaser in possession of the land, save the house, garden, yard and outbuildings, thereby in effect denying any right of redemption, regardless of what the property might bring.

Orders were also made enjoining the creditors from bringing separate actions, and referring the cause to a commissioner for proof of claims.

Up to this time the defendant Wells, and a lien creditor, one Bergen, had not been brought before the court by service of summons. Section 438 of the Civil Code provides, however, that in an action to sell property held in trust for the payment of debts, it shall not be necessary, as it is in a suit to settle a decedent's estate, to make all the lien creditors parties.

The title to the land was not in Wells. He was not only a proper but a necessary party to the suit, because of his interest in it, but not for the purpose of passing the title to a purchaser. He had already parted with it for a specific purpose. It had vested in his assignee.

Moreover, it appears from the testimony, but not by
any entry of record, that his two attorneys, in open
court, consented for him to the rendition of a decree of
sale at the time it was entered.   Their right to do so is
now denied.   It is urged that they were also the at-
torneys of the assignee in this suit.   It is undoubtedly
a safe rule, supported by both reason and sound moral-
ity, that whenever an agent or attorney accepts another
employment in conflict with the interests of his first
principal or client, it ends his first engagement.   He
cannot act for him and at the same time be against him.
When such antagonism arises, the law steps in and
says to him that his further action is likely to tempt
him to mischief and dishonesty, and lead to the injury
of his principal.

Such a case is not here presented, however.   There
is not necessarily any antagonism of interest between
the debtors and their assignee.   It is his duty to apply
the property in payment of their debts.   They convey
it to him for this purpose; and it is their moral and
legal duty to throw no obstacle in his way.   It is true
a case might arise where it would be improper for the
same attorney to represent both; but this record does
not present it.

The land having been sold, the appellants, Graves
and Wells, gave notice and moved to set aside the
judgment.   They also filed exceptions to the report of
sale, but their objections, as well as their motion to set
aside the judgment, were overruled, and they have ap-
pealed.   But one of the exceptions was well grounded.

Prior to the act of April 9, 1878 (General Statutes,
p. 972), the debtor's right for twelve months after a

sale to redeem his property, if sold for less than two-thirds of its appraised value, was confined to sales under execution. If sold under decree, there was no such right. His property was, therefore, often sacrificed. In view of this fact the Legislature passed the act named, which has the general title : "An act providing for the redemption of real estate sold under an order or judgment of a court," and provides : "Before *any* real estate shall be hereafter sold, in pursuance of any order or judgment of a court, the commissioner or officer, whose duty it may be to sell the same, shall cause it to be valued.   *   *   *   The valuation so made *shall* be in writing, signed by the persons making it, and returned by such commissioner or officer to the court which made the order or rendered the judgment for the sale of the property."   *   *   *   *

"If the real estate which may be sold in pursuance of such judgment or order does not bring two-thirds of such valuation, the defendant and his representatives shall have the right to redeem the same within a year from the day of sale, by paying the purchaser or his representatives the original purchase money, and ten per centum per annum interest thereon.   *   *   *

"If the judgment in pursuance of which such sale is made be not satisfied by such sale, the right of redemption herein provided for may be sold in satisfaction of the residue of such judgment; and the said right of redemption shall also be liable to sale under execution. The land shall, in such case, be still liable to redemption from both purchasers until the end of a year from the first sale."

If the wisdom or expediency of this act were open

to question, it is not our province to determine it. That is a matter which, subject alone to constitutional restraint, must be left to legislative judgment.

Viewed by past and then existing circumstances and the object within the legislative eye, it is evident that the law-maker intended to give to the debtor an opportunity to redeem his property in all cases where it might be coercively sold for debt, and fail to bring two-thirds of its appraised value. It was the purpose to put all coercive sales of real property for debt upon the same footing.

It is urged that, in this instance, the judgment was not directly against the debtor; that the assignee, who asks the sale, represents him as well as the creditor, and that, therefore, the act does not apply. Undoubtedly it does not, as was held in the case of Wooldridge v. Jacob's Guardian, 79 Ky., 250, where the sale is for the benefit of the owner alone, as where the property of an infant is sold upon the petition of his guardian under article 3, chapter 63, of the General Statutes. It relates to sales for debt only. It substantially says so. The case now in hand, however, was a coercive sale for the debts of the appellants. The property was as much liable to sacrifice as if it had been sold under execution, or a judgment rendered in an action by the creditor directly against his debtor. If so, and the legislative purpose was to prevent such loss, then the act should be construed to that end, if its terms fairly admit of it. We are not disposed to cramp its operation by a strict construction. It is for the benefit of both the debtor and his creditor. It will often serve to prevent one creditor from obtaining all

the property of the debtor, or the benefit of it, at a ruinous price, to the exclusion and injury of his other .creditors.   The spirit of it, as well as the plain import of its language, show that it was intended to embrace all coercive sales for debt ; and it therefore provides that before *any* real estate shall be sold for this purpose it *shall* be valued.   Where an administrator sues to subject the real estate of the decedent to the payment of the debts, he acts both for the creditor and the estate.   He asks that the sale be made ; and yet this court, in the case of Cantrill v. Perry's Adm'r, 7 Ky. Law Rep., 446, held that the act in question applied to such a case, and that the sale could not be sustained, because the property had not previously been valued.

Our conclusion is, that the statute embraces a case like the one now before us.   Its language gives to "the defendant (meaning the debtor) and his representatives" the right to redeem.   He has an interest in the property, although he has placed it in trust for the payment of his debts, and passed the title to his assignee for this purpose.   If he were to pay all his debts, he would be entitled to a re-conveyance.

We fail to see that such a construction will be likely to work an injury to the insolvent estate or the creditors.   It is likely to do so but seldom at most ; and will more often, it is probable, redound to their advantage by preventing a sacrifice of it.

It is true, the act provides that if the property does not bring two-thirds of the appraised value, the debtor *may* remain in possession until the expiration of the year within which it may be redeemed ; but

this is equally so in cases of sales under execution or under judgments rendered in actions brought directly by the creditor against his debtor.

Here there was no appraisement before the sale. It was not essential to the validity of the judgment that it should in express terms direct it, because the law required the officer to have it done; but it by implication directed the contrary, because it improperly provided that the commissioner should, without regard to what the property might bring, at once put the purchaser in possession. The employment of attorneys did not confer the power upon them to waive their client's right to redeem their property, or any steps necessary thereto, even conceding that they attempted to do so. Evidence that it in fact sold for a fair value, or more than the two-thirds of any appraised value which could fairly have been placed upon it, can not avail. If so, it could equally be urged that a judicial sale, made without advertisement or otherwise in violation of law, should be upheld, because the property in fact brought a fair price. The law is imperative that the valuation *shall* be made *before* the sale. It is not merely directory. It goes to the right of the debtor, and reaches to the interest of the creditors. It is the statutory test of the right of the one to redeem, and of the other to still look to the property for the payment of their debts. No coercive sale for debt can be lawfully made in the absence of this valuation. The statute forbids it; and it was not intended that its place should be supplied by testimony given after the sale and heard upon the question of its confirmation.

The judgment is reversed, and cause remanded for further proceedings consistent with this opinion.