GIVEN v. OWEN et al.

No. 8813—Opinion Filed Sept. 24, 1918.

(175 Pac. 345.)

1. Courts—Statutes—Statute from Another State—Adoption of Judicial Construction — Subsequent Construction in Other State.

The Legislature of this state, in adopting a statute from another state, is deemed to have adopted the existing judicial construction thereof by the courts of last resort of the state from which the same is taken. This court is not bound by a subsequent construction nor by the decision of an intermediate court of appeals of such state.

2. Attachment — Sale Without Appraisal — Validity.

Under an order of attachment, real property of the defendant was levied upon and duly appraised by the sheriff and two householders as required by the statutes relating to attachment. Judgment of foreclosure of attachment lien was rendered, and the property was sold under order of sale issued thereafter without further appraisement. Held, that the sale was void, and that the motion of defendant to set the same aside should have been sustained.

(Syllabus by Stewart, C.)

Error from Superior Court, Tulsa County; M. A. Breckinridge, Judge.

Action by J. C. Owen and others against John P. Given, with attachment. Judgment for plaintiffs, sale of land ordered and confirmed, defendant's motion to vacate and set aside the sale overruled, and he brings error. Reversed, with directions to trial court to sustain motion and recall any deed issued under the sale.

James P. Gilmore and Edward P. Marshall, for plaintiff in error.

Opinion by STEWART, C. Land of defendant was taken in attachment proceedings, being appraised under the writ of attachment. Judgment was afterwards rendered against the defendant, and the land sold under order of sale without appraisement, the sale being confirmed by the court. At the same term of the court the defendant, plaintiff in error in this court, filed motion to vacate and set aside the sale, assigning, among other reasons, that no appraisement of the land was had after judgment and the issuance of the order of sale. The trial court overruled the motion, and the defendant brings error.

As to the sale of attached property, in case of judgment of foreclosure of attachment lien, section 4856, Revised Laws 1910, provides:

"If judgment be rendered for the plaintiff, it shall be satisfied as follows: So much of the property remaining in the hands of the officer, after applying the moneys arising from the sale of perishable property, and so much of the personal property and lands and tenements, if any, whether held by legal or equitable title, as may be necessary to satisfy the judgment, shall be sold by order of the court, under the same restrictions * * * as if the same had been levied on by execution; and the money arising therefrom, with the amount which may be recovered from the garnishee, shall be applied to satisfy the judgment and costs. If there be not enough to satisfy the same, the judgment shall stand, and execution may issue thereon for the residue, in all respects as in other cases. Any surplus of the attached property or its proceeds shall be returned to the defendant."

An order of sale under a final judgment is a species of execution and for such reason real estate sold thereunder should be appraised in accordance with statutory requirements applying to sales under execution. Section 5161, Revised Laws 1910. If any doubt exists as to this rule applying to the selling of attached property after judgment of foreclosure of attachment lien, it would be removed by reading the section quoted, which specifically and conclusively expresses that such was the legislative intent, it being therein provided that the property shall be sold "under the same restrictions as if the same had been levied on by execution."

But our attention is called to Shaffer v. Knox et al., 7 Kan. App. 182, 53 Pac. 785, in which case it is said in the syllabus:

"A sale of attached property under an order of sale issued after final judgment in attachment proceedings, without any appraised value under the order of attachment, is voidable, but not absolutely void."

The decision was handed down July 8, 1898, long after the adoption of the Kansas Code of Procedure by the territory of Oklahoma; for which reason, and the additional reason that the court rendering the opinion was not a court of last resort in the state of Kansas, this court will not hold itself bound by the construction promulgated.

The reasoning of the Kansas Court of Appeals is unsound, and the conclusion reached is dangerous. The statutes provide for an appraisement by three disinterested householders, residents of the county, and the court is not authorized to hear testimony and determine the value, thus substituting its judgment as to value for that of the appraisers who are vested by statute with this exclusive prerogative. The exercise of

such authority is wholly unwarranted, and, in good conscience, should not be attempted. Nor is there any sound rule of construction that will uphold the substitution of an appraisement of property required and made under one process of the court, which process and appraisement have served their purpose and become functus officio, for an appraisement which is mandatory under another process, required by statute to be made at another time, for a different purpose, by a different class of appraisers, and in a different manner. Such a course, if authorized by the courts, would be tantamount to judicial legislation, and in cases like the one at bar would render nugatory wholesome enactments meant to protect those whom misfortune has overtaken and whose property is taken without their consent, the result being abuse of the processes of the courts and oppression of the unlearned and the unwary. Mere informalities, when an appraisement required is actually made, may not always render a sale void, but total failure to make an appraisement commanded by statute is fatal. Such principle is announced with practical uniformity by courts of last resort, including the Supreme Court of Kansas, and is the rule of this court. Hancock v. Youree, 25 Okla. 460, 106 Pac. 841, and cases therein cited; Johnson v. Lynch et al., 38 Okla. 145, 132 Pac. 350.

The appraisement in attachment proceedings is summary, and has a threefold purpose: First, to take sufficient property to satisfy the debt; second, to prevent an excessive levy; and, third, to fix the value, in case of personal property, as a basis for a redelivery bond. It is obvious, from even a cursory perusal of the statute, that the appraisement under attachment and the appraisement under execution differ in time, manner, and purpose. Section 5161, Revised Laws 1910, reads:

"If execution be levied upon lands and tenements, the officer levying such execution shall call an inquest of three disinterested householders, who shall be resident within the county where the lands taken in execution are situate, and administer to them an oath impartially to appraise the property so levied on, upon actual view; and such householder shall forthwith return to said officer, under their hands, an estimate of the real value of said property."

Section 4819, Revised Laws 1910, provides:

"The order of attachment shall be executed by the sheriff without delay. He shall go to the place where the defendant's property may be found, and declare that by virtue of said order, he attaches said property at the suit of the plaintiff; and the officer, with two householders, who shall be first sworn or affirmed by the officer, shall make a true inventory and appraisement of all the property attached which shall be signed by the officer and householders, and returned with the order.

It thus appears that, under attachment, the appraisement is made by the officer and any two householders, and under execution it is made by three disinterested householders, residents of the county, and returned to such officer. The statute does not require the appraisers under an order of attachment to be residents of the county or disinterested. The presumption is that the officer is disinterested and not partisan. However, any one experienced in such matters knows that, in many cases, it is a violent presumption. He should, of course, select disinterested appraisers to assist him; but it is evident that our lawmakers did not deem his conduct in this respect of as much importance as in case of execution. It is the duty of the officer to take sufficient property to satisfy the claim and probable costs, but he is forbidden to make an excessive levy. He cannot, in the nature of things, act with great deliberation either as to the selection of appraisers or in fixing the value. In order to expedite the business in hand and to prevent delay, he is made one of the appraisers. He must act with haste in order to prevent concealment of property rights or disposition of property. He is allowed more or less latitude, hedged about by such restrictions as the summary nature of the proceedings will permit. The alleged debtor is protected by a bond, which is not the case where the property is sold under final judgment and order of the court. When judgment is rendered, and the property is to be sold, there is no longer any necessity for haste. In finally divesting the title great care and deliberation should be used, in order that injustice and oppression may not follow. Neither the creditor nor the debtor should be bound by the value thus summarily and hastily fixed. The sale should be free from the suspicion of partisanship. The officer's duties in executing the order of sale are purely ministerial—carrying out the commands of the court in accordance with established law. He cannot, under the statute, and ought not to, exercise the quasi judicial function of ascertaining the value of the property as a basis upon which he is to accept bids. For reasons the wisdom of which is apparent, this function is lodged by statute wholly in others possessing the qualifications as to residence and disinterestedness. Such appraisers should not be chosen hastily, but with great care, and with

a view to both fitness and statutory qualification. Again, it is a matter of common knowledge that in many cases suits in attachment linger in the courts for a long time after being commenced. The property may greatly increase or diminish in value before order of sale issues. After issuing the order of sale, and before the consummation of the sale, the party whose property is to be sold has a right to have the value ascertained and fixed deliberately and fairly in the manner prescribed by law, and is justified in presuming that, before the property is sold, the officer executing the order will discharge his duty and comply with the requirements of the law in all essential respects.

The opinion of the Kansas Court of Appeals is not only not in harmony with the underlying principles involved, but is out of line with the holding of the Supreme Court of Kansas in Gapen v. Stephenson. 17 Kan. 613, a case decided prior to our adoption of the Kansas Code of Procedure. In that case Mr. Chief Justice Horton, speaking for the court, expressed the correct view, though the same is perhaps open to the charge of being dictum. He said:

"After judgment, and a decree to sell the attached property, the object of the appraisement * * * has been accomplished—the appraisement has become, so to speak, functus officio. Before a sale can be made under the order of the court on the judgment, another appraisement of the real estate must be had."

In Hancock v. Youree et al., supra, this court said:

"The record discloses that the property was sold without appraisement and that the order of sale and sale thereunder took place before the expiration of six months from the date of judgment. Hence the sale had thereunder was void, and the court committed no error in setting the same aside and recalling the deed issued thereunder."

The view of this court is also expressed in Johnson v. Lynch et al., supra:

"Failure to appraise the property sold, as required by section 5977, Comp. Laws 1909 (Rev. Laws 1910, § 5161), unless waived, renders the sale void, and the court should have refused to confirm same, and upon the motion of plaintiffs in error the sale should have been set aside."

It is said in Graves & Wells v. Long, 87 Ky. 441, 9 S. W. 297:

"Evidence that it in fact sold for a fair value, or more than the two-thirds of any appraised value which could fairly have been placed upon it, cannot avail. If so, it could equally be urged that a judicial sale, made without advertisement or otherwise in violation of law, should be upheld, because the property in fact brought a fair price. The law is imperative that the valuation shall be made before the sale. It is not merely directory. It goes to the right of the debtor, and reaches to the interest of the creditors."

Authorities could be multiplied and many other reasons offered based on sound principles of construction, but sufficient has been said to show that the trial court erred in overruling the motion to set aside the sale

The cause is reversed, with directions to the trial court to sustain the motion to set aside the sale and to recall any deed issued thereunder.

By the Court: It is so ordered.