## CHERRY et al. v. GODARD et al.

No. 21875. Dec. 22, 1936.

Rehearing Denied Jan. 19, 1937.

Application for Leave to File Second Petition for Rehearing Denied Feb. 2, 1937.

Cox & Cox, for plaintiffs in error.
Erwin & Erwin, for defendants in error.

BUSBY, J. Edward E. Godard died in

1916, or prior thereto, leaving as his heirs his wife, Odia O. Godard, and seven minor children. At the time of his death he owned an 80-acre tract of land, the title to which passed to his wife and children, 7/21 to the wife and 2/21 to each of the children. Later the wife's interest was increased to 9/21 by reason of the death of one of the children whose interest she acquired by decree of distribution in connection with the administration of the deceased child's estate. In connection with the administration of the estate of Edward E. Godard the 80-acre tract was set aside as a probate homestead. When in the subsequent portions of this opinion we refer to the land, such reference will be understood to allude to this particular tract of land.

Mrs. Godard remarried in 1919, becoming Mrs. Butler. Since her remarriage she has never lived on the land in question. In fact, during a portion of the time she lived outside the state of Oklahoma.

On the 2nd day of January, 1923, Mrs. Butler executed and delivered a promissory note to J. W. Cherry for the principal sum of $281.25, together with interest thereon at the rate of 10 per cent. per annum. The note recited that the consideration for which it was given was material furnished for and used in the construction of a dwelling house on the above-mentioned land. It also contained a waiver or purported waiver of the appraisement laws of the state.

In 1926 J. W. Cherry commenced an action in the district court of Lincoln county. He sought a money judgment on the note and specifically pleaded the consideration recited in the face of the note. A copy of the note was attached to the petition. At the commencement of the action the land was attached and service obtained upon Mrs. Butler by publication upon the theory that she was then a nonresident of the state. Mrs. Butler entered her appearance for the purpose of defending the action and presented a counterclaim for damages for alleged wrongful attachment. Her defense and cross-demand were unsuccessful. The case was tried and resulted in a judgment against her for the amount due on the note and decreeing the land to be subject to the payment of the debt and ordering the sale thereof without appraisement after the expiration of six months from the date of the judgment. A more detailed analysis of this judgment and the pleadings upon which the same was predicated will be made hereafter.

In connection with the ancillary attachment proceeding, Mrs. Butler presented a motion to dissolve the attachment based in part upon the alleged exempt character of the land. The motion was denied. No appeal was taken by Mrs. Butler from either the adverse judgment above referred to or the order refusing to dissolve the attachment. Both became final for such effect as they may be entitled to under the principle governing res adjudicata and estoppel by judgment.

After expiration of six months from the date of the judgment a special execution was issued and a 9/21 interest in the land belonging to Mrs. Butler was sold pursuant to the judgment in the manner provided by law for sales of land on execution without appraisement. J. W. Cherry, the judgment creditor, became the purchaser, and, on his motion, the sale was confirmed by order of the district court of Lincoln county. No appeal was taken from the order of confirmation. The purchaser entered into possession of the premises through Bill Dunker, a tenant.

Thereafter and on the 24th day of May, 1929, Mrs. Butler, joined by one of her children, Russell Godard, who was still a minor, commenced this action in the district court of Lincoln county against Mr. Cherry and his tenant. She sought to cancel the sheriff's deed, recover possession of the land, and quiet title thereto. The theory of her action was that the execution sale and the deed executed pursuant thereto were void for want of appraisement of the land sold and was also void by reason of the alleged exempt character of such land arising from its asserted classification as a homestead. The defendant, Cherry, and his tenant resisted the action in part upon the theory that the issues tendered by the plaintiff had been finally and conclusively adjudicated adversely to her in the prior litigation, and therefore could not be relitigated in this action. The defendant also caused the remaining Godard children to be made parties defendant in this action and sought by way of cross-petition to partition the land.

On the trial of this case in the court below the plaintiffs were partially successful. The sheriff's deed was declared void and judgment for possession of the premises was entered. However, title was not quieted in the plaintiff as against J. W. Cherry, from which it may be inferred that the trial court regarded the prior judgment as a continuing lien upon the property, and from which the further inference may be drawn that the basis of the trial court's decision

was the want of appraisement in connection with the execution sale, rather than the asserted nonliability of the land by reason of its alleged homestead character.

J. W. Cherry and his tenant bring the case to this court on appeal, appearing herein as plaintiffs in error. They rely for reversal upon the asserted conclusive determination of the issues in the prior proceeding.

Perhaps the best method of approaching the problem is to eliminate those steps in the prior procedure which under our decisions are insufficient or of doubtful sufficiency to constitute a final determination of the issues involved in this case. We will then be free to determine the more debatable questions. We shall also reserve for later treatment questions relating to the identity of the parties to the two actions.

The order refusing to dissolve the attachment and thus denying the defendant's contention that the property was exempt from satisfying the debt involved in the prior action did not constitute a conclusive determination of the question of exemption. See Shelby v. Ziegler, 22 Okla. 799, 98 P. 989; Brunson v. Merrill, 17 Okla. 44, 86 P. 431; Cross v. Inge, 105 Okla. 145, 231 P. 1066. This view was adopted in this state upon consideration of judicial decisions of the state of Kansas, from which our applicable statutes came. Its soundness was questioned at the time of its adoption, but it represents the established law of this state and will not be departed from at this date. Shelby v. Ziegler, supra. Similar considerations seem to govern in determining the effect of orders in garnishment proceedings. State National Bank v. Lokey et ux., 112 Okla. 82, 240 P. 101. Both of these proceedings to which this court has refused to give the effect of res adjudicata are ancillary proceedings, as distinguished from the main or principal action. The foregoing decisions do not deal with issues raised and decided in the principal or main action, as distinguished from such ancillary proceedings.

The question of sale without appraisement in this action was not involved in the ancillary proceeding to dissolve attachment, and the order entered therein can have no effect on that issue. Thus the order made in connection with the proceeding to dissolve the attachment in connection with the prior action does not constitute a proper basis for the plea of res adjudicata upon either the homestead or the appraisement question and may be eliminated from further consideration in this case.

The sale of land on general execution by a sheriff is governed by the mandate of the statutes and not by the prior order of a court. It therefore involves no judicial act and cannot constitute the basis of a successful plea of res adjudicata or estoppel by judgment. But this rule does not apply to sales on special execution in so far as they are subject to the prior direction of the court, because such prior direction of the court constitutes a judicial act which may, in itself, constitute a determination of issues between the parties to the litigation. This subject will be more fully treated later.

In this state sales of land upon either general or special execution are required to be confirmed by the court. Section 456, O. S. 1931. Such confirmation is a judicial act and as such is entitled to and accorded some curative effect. See Dixon v. Peacock, 43 Okla. 87, 141 P. 429; Morgan v. Stevens, 101 Okla. 116, 223 P. 365. However, this judicial act of confirmation is not ordinarily given the same standing as is attributed to a decision upon carefully framed issues and pursuant to a formal notice. The reason for this limitation upon its standing in the field of judicial decisions is the limited scope of the inquiry and the recognized fact that such orders of confirmation are frequently entered in an ex parte manner. As was said by the Kansas court in the case of Brewer v. Warner (Kan.) 182 P. 411, 5 A. L. R. 385:

"In the case of a sale under general execution the sheriff does not act as the agent of the court. The court has not specified the property or adjudicated the lien, and has not otherwise been concerned with the course which the sheriff shall pursue. In executing the process the sheriff has no guidance but the law, and takes his chance of finding and levying on property which is not exempt.

"The purchaser at a sheriff's sale is not an innocent purchaser. He knows the limitations on the sheriff's power and buys what the sheriff can sell, and no more. When the sheriff's return of sale comes before the court for confirmation, the proceeding may be, and commonly is, ex parte. Confirmation may take place on the motion of the sheriff, or of the purchaser, or on the court's own motion, and at any time, without notice to anybody. Confirmation usually follows an inspection of the writ and the return, and so far as the record discloses, confirmation in this case was typical. The order of confirmation is, indeed, an adjudication of all the facts involved in the inquiry (Carter v. Hyatt, 76 Kan. 304, 306, 91 P. 61); but how does the question of the exempt character of land seized and sold get into the case at that time?"

Upon consideration of the nature of the proceedings upon which a sale of property is based, this court has held that the confirmation of an execution sale does not adjudicate the validity of the sale as against a subsequent claim of invalidity for want of appraisement. See Cuff v. Koslosky, 165 Okla. 135. 25 P. (2d) 290. Upon msiilar considertion, it would seem that the confirmation of such a sale does not foreclose a subsequent assertion of the exempt character of the property in an appropriate action. The Kansas court so held under statutes similar to ours. Brewer et al. v. Warner, supra.

Thus neither the fact that the property in this case was sold on execution nor the fact that the sale was confirmed by the court is available in support of the plea of res adjudicata.

But the claim of J. W. Cherry and his tenant finds a sound foundation in the judgment which preceded the execution in this case. Freeman in his admirable work on Judgments (5th Ed.) states the applicable law in paragraph 846, beginning at page 1792. We quote:

"The order or judgment on a contested claim of homestead or exemption is conclusive on the parties to it of all the matters adjudicated. * * * **The judgment in a suit or other proceeding to subject property to a debt and which involves the necessity for asserting a claim of homestead or exemption, is a conclusive adjudication of such claim.** * * * In a suit wherein the petition alleges grounds for attachment and an order for attachment is issued and served, the judgment, though sustaining the grounds of attachment. is not res judicata as to a subsequent claim of exemption or homestead right in the attached property **unless it also expressly adjudicates a lien upon the property.**

"So a decree setting aside a conveyance as in fraud of creditors is not res judicata as to the existence of a homestead in the premises if the latter claim was not put in issue. **But where the purpose of such a suit is to have a lien declared and enforced against the property, a homestead, if one exists, is held to be a defense, and if it is not presented as such the judgment enforcing the lien conclusively adjudicates its non-existence.**" (Emphasis ours.)

From the foregoing authorities and other authorities which we shall subsequently review in this opinion, it is apparent that, where the principal litigation, as distinguished from ancillary proceedings, has, for one of its objects, the subjection of the particular property to the payment of a debt, and the effort to subject such property to the payment of a debt is resisted upon the theory that the property is exempt, the decision of a court making the debt a charge against the property is a final and conclusive determination of the issue and precludes a successful effort in subsequent litigation to relieve the property of the burden thus imposed.

In this case we have a judgment preceding the execution which directed the sale of particular land to satisfy a debt found to be due—a judgment which, as we interpret the pleadings, was responsive to the issues framed thereby.

The issues tendered by the pleadings are determined by the facts therein alleged, as distinguished from the prayer thereof. Myler v. Fidelity Mut. Life Ins. Co., 64 Okla. 293, 167 P. 601; Harmon v. Hines, 160 Okla. 120, 16 P. (2d) 94. An examination of the plaintiff's petition in the previous action discloses the following pertinent allegation:

"That said note was executed and delivered as an evidence of indebtedness due from defendant to plaintiff for lumber and other building material sold and delivered by plaintiff to defendant for the construction and erection, and which was used for the construction and erection, of a dwelling house on the east half of the southeast quarter of section thirty-one, township fourteen north, and range three east of the Indian Meridian in Lincoln county, state of Oklahoma."

The obvious purpose of this allegation was to procure an adjudication that the indebtedness sought to be reduced to judgment was enforceable against the land described, regardless of its homestead character. The plaintiff in the prior action was evidently seeking to bring himself within one of the exceptions to our homestead constitutional provision (section 2 of art. 12, Okla. Const.) which reads:

"**The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon;** nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; Provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any. joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage."

It is apparent that he was invoking as applicable to his case the rule announced by

this court in Kleindorfer v. Dascomb-Daniels Lbr. Co., 102 Okla. 60, 226 P. 354, wherein we said in paragraphs 1 and 2 of the syllabus:

"The homestead of the head of a family is subject to sale for the satisfaction of a personal judgment representing the purchase price of material used in constructing improvements thereon and without regard to the creation or existence of a material-man's lien.

"When the provisions of the materialman's lien statute are complied with, the lien attaches to the homestead on which the material was used, from the time the material was furnished, but when no materialman's lien was created because of the failure to comply with the provisions of the statute, but a personal judgment for the amount due for the material used in constructing improvements on the homestead is obtained against the owner of the homestead, the lien attaches from the date of the judgment in the district court, subject to the superior intervening rights of third persons."

Of course, that case involved an exemption homestead, whereas this case involves the probate homestead. The two kinds of homestead are in some respects distinguishable. See In re Estate of Gardner, etc., 122 Okla. 26, 250 P. 490. But there is a similarity and identity of characteristics in other respects and one character of the homestead may ripen into the other. Section 1223, O. S. 1931. In general, the same classes of claims which are enforceable against the exemption homestead may be enforced against the probate homestead. See section 1225, O. S. 1931. Thus a rule of law applicable to one may be available in connection with litigation involving the other, or such a rule of law established in connection with one character of homestead may be considered by analogy for the purpose of establishing the proper rule to be applied to the other.

This similarity in governing principles has been previously noted by this court. Bledsoe, Adm'r, v. Green, 138 Okla. 15, 280 P. 301. It is not necessary in this litigation to determine whether the rule announced in Kleindorfer v. Dascomb-Daniels Lbr. Co., supra, is applicable to a probate homestead. It is only necessary that we determine whether the question of its applicability was inquired into and decided in the prior proceeding. It is essential that a judicial inquiry into the question should have been invited by the pleadings in the prior action. Welch v. Focht et al., 67 Okla. 275, 171 P. 730, L. R. A. 1918D, 1163. Thus, if the issue was tendered and decided in the prior pro-

ceeding, the decision was final and conclusive, even though erroneous, since the finality of the decision depends upon the jurisdiction of the court and the power to decide the issue, rather than upon the correctness of the decision rendered. Bledsoe v. Green, supra; Miller v. Madigan, 90 Okla. 17, 215 P. 742.

As we have previously noted, the plaintiff in his petition asserted the consideration of the note as a part of the allegations in his petition for the obvious purpose of impressing the indebtedness as a judgment lien upon the property. The defendant in her answer in the prior action asserted the homestead character of the property. It is true that in the answer the homestead character was asserted in part, at least, as the basis of a claim for damages for alleged wrongful attachment, but the pleading is susceptible of the broader interpretation that the alleged fact as pleaded was asserted for the additional purpose of defeating the plaintiff's right to subject the land to the payment of the debt. If any doubt ever existed in the prior action as to the plaintiff's intention to secure a judgment which should constitute a lien upon the land in question, it was definitely set at rest by the reply, which not only asserted the right to subject the land to the satisfaction of the debt, but also definitely requested that relief. This latter pleading of the plaintiff read in part as follows:

"He admits that he caused an attachment to be issued and levied upon the east half of the southeast quarter of section thirty-one, township fourteen north, and range three east of the Indian Meridian in Lincoln county, state of Oklahoma, but denies that the same was the homestead of the defendant. Or, if her homestead, he alleges and states that the debt, evidenced by the note sued upon, is for lumber and material furnished the defendant at her instance and request, and under oral contract between plaintiff and defendant, and used in the erection and construction of a building and dwelling house on the real estate above described.

"Wherefore, plaintiff prays judgment as sought in his petition, **and that the real estate seized as aforesaid be sold to satisfy said debt.**"

The relief thus requested was granted in the judgment of the court, which read in part:

"And it's the further order of the court that, after the expiration of six months from the date of rendition of this judgment, viz.: the 13th day of April, 1928, an execution be issued by the court clerk of said county directed to and commanding the

sheriff of said county to sell said real estate, in the manner provided by law for sales of real estate on execution without appraisement, to satisfy and pay the sums hereinbefore adjudged to the plaintiff."

We are thus confronted in connection with the plea of res adjudicata with a judgment which not only determines the amount to be paid, but likewise decrees that the particular land involved is subject to the payment thereof. This latter portion of the decree was entered in the face of a pleading which asserted the homestead character of the land. The judgment could have been rendered upon either of two theories and must have been rendered upon one of them, either that the land was not a homestead, or that, if a homestead, it was subject to the payment of the particular debt by reason of the consideration for the same. Regardless of the basis of the decision, the result would be the same and constitute a judicial determination that the land was subject to the payment of the judgment entered.

A judgment is the final determination of the rights of the parties in an action. Section 416, O. S. 1931. The judgment entered in the prior proceedings between the parties to this litigation represented the final conclusion of a court of competent jurisdiction in determining that the land herein involved was subject to sale for the payment of the debt reduced to judgment. The decision was not appealed from, and is now being collaterally attacked. The procedure to sell in this case was unlike a sale on general execution. The vital difference exists in the judgment which preceded the sale and by which the particular property to be sold was designated.

When an issue of law or fact is once tried upon the merits and finally decided by a court of competent jurisdiction having jurisdiction of the subject-matter and of the parties and the power to decide the issue, the same question cannot thereafter be retried and decided differently in another subsequent and different action between the same parties, provided, of course, the plea of res adjudicata or estoppel by judgment is properly presented by the pleadings. 15 R. C. L. 590; U. S. F. & G. Co. v. Harmon, 92 Okla. 167, 218 P. 682: Hare Min. & Mill. Co. v. Keys, 120 Okla. 217, 251 P. 77; Peter v. Mozier, 138 Okla. 288, 281 P. 141.

The issue of whether land sought to be impressed with the payment of a debt is of a homestead character and as such beyond the reach of the creditor is no exception to this general rule. 13 R. C. L. p. 695; Anno. 103 A. L. R. 938. This question most frequently arises in connection with mortgage foreclosure actions. But the application of the principle is not limited to that class of actions. Thus in the case of Collins et al. v. Chantland et al., 48 Iowa, 241, a wife instituted an action against a third party for injuries sustained by reason of the sale of intoxicating liquor to her husband, and the owner of the premises on which the liquor was sold was made a party to the action and a lien claimed against his real estate. A money judgment was entered for the plaintiff which was decreed to be a lien against the property involved. Subsequently the owner of the property attempted to release the same in an independent action on the theory that it constituted a homestead. The Iowa court in disposing of the question said:

"The plaintiff Collins was a party to the action wherein judgment was rendered against his property. Any defense which he had to the claim for a lien made against him should have been made in that action. Failing to make such defense, he cannot resist the enforcement of the judgment upon the ground that the property is exempt from the lien. The question of the lien is res adjudicata. His ignorance of his rights at the time the judgment was rendered is no ground for setting it aside. These positions rest upon elementary principles that need not be stated here."

In the case of Taylor v. Campbell, 139 Okla. 110, 281 P. 243, this court held that the failure to assert a homestead claim in an ejectment action where it could and should have been asserted made the judgment in that action conclusive upon the homestead question. In the case of Bledsoe v. Green, supra, a man and wife had executed a mortgage. The man died leaving a wife and minor children. A foreclosure action was instituted against the wife individually and as administratrix of her husband's estate. Judgment was entered and the land sold to satisfy the mortgage debt. The wife and minor children then joined in attacking the sale, asserting their homestead interests to defeat the same. This court held the judgment and sale good as to the wife's interest, but invalid as to the interest of the children. We said in disposing of that controversy:

"Upon the death of her husband, she had the right to continue to possess and occupy the homestead until it was otherwise disposed of according to law. Section 1224, C. O. S. 1921. The phrase, 'until it is otherwise disposed of according to law,' as

used in this section, means that the homestead may be sold upon foreclosure of any mortgage thereon executed by both husband and wife. Pioneer Mortgage Co. v. Carter, supra. The mortgage in question was executed by the husband and wife, and the judgment finding jurisdictional facts and ordering the sale of the property, even though it was a homestead, is a valid judgment as against Jettie Perry."

Incidentally, we should note in comparing these two actions involving the force and effect of the decision in Bledsoe v. Green, supra, that the portion of the judgment held invalid therein was that portion which decrees a sale of the interest in the land which belonged to the children. In this action no effort was made to sell the portion of the fee belonging to the children of Edward E. Godard. Only the undivided interest of his widow was sold. The interest of the children was not disturbed, unless they may be said to have had at the time a possessory homestead interest in the property.

This brings us to the question of whether the necessary parties were before the court in the prior procedure, a question which we have refrained from discussing prior to this time.

Our statute providing for the probate homestead, being section 1223, O. S. 1931, reads in part as follows:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age."

In the case of Hembree v. Magnolia Pet. Co., 176 Okla. 524, 56 P. (2d) 851, this court had occasion to consider in detail the interest, if any, which was acquired by the children upon the death of a father and during the lifetime of their mother, and it was therein held that during the lifetime of the widow the children acquired no homestead interest in the property. No homestead interest vests in the children unless the widow dies during the minority of one or more of such children. If the widow lives until they all become of age, no homestead interest ever vests in them. At the time the prior litigation was instituted, at the time this case was tried in the trial court, and even until this date, the widow of Edward E. Godard is still living. The children have never had any homestead interest in this land. It follows that the children of Edward E. Godard were not essential parties to the prior action, in which no effort was made to sell their interest in the fee or to impress the judgment as a lien upon such interest. We therefore conclude on this phase of the case that, since the prior action had for one of its purposes the impression of the debt therein involved upon the real estate heretofore described in this opinion, and since the homestead claim was therein presented, the decision of the court in that action decreeing the land to be subject to the payment of the debt was a final and conclusive adjudication in so far as the 9/21 interest sold was concerned, that it was not exempt from such payment by reason of its asserted homestead character.

This brings us to a consideration of the phase of the case involving the sale without appraisement. As we have already noted, the court, in rendering judgment in the prior action, ordered that the land be sold without appraisement. It was provided, however, in the judgment that the execution should not issue until after the expiration of six months from the date of the judgment.

Section 451, O. S. 1931, reads as follows:

"If the words 'appraisemeent waived,' or other words of similar import, shall be inserted in any deed, mortgages, bonds, notes, bill or written contract, any court rendering judgment thereon shall order as part of the judgment that the same, and any process issued thereon, shall be enforced, and that lands and tenements may be sold thereunder without appraisement; and such judgment, and any process issued thereon, shall be enforced, and sale of land and tenements made thereunder, without any appraisement or valuation being made of the property to be sold; Provided, that no order of sale or execution shall be issued upon such judgment until the expiration of six months from the time of the rendition of said judgment."

Ordinarily, when lands and tenements are sold upon execution, appraisement is essential to the validity of the sale. But the above statute creates or purports to create an exception to this usual procedure and directs that a sale may be made without appraisement in case appraisement is waived in any "deed, mortgage, bonds, notes, bill or written contract". This statute imposes upon the court the duty of determining at the time of the judgment the applicability of the statute to the particular written instrument involved in the action. The trial court in the prior proceeding did deter-

165

mine that the statute was applicable and ordered that the land which was subject to the payment of the judgment should be so sold. The interested parties were before the court and aware of the character of the judgment entered. No appeal was taken from the same. It is a debatable question whether this statute is applicable, since the words "appraisement waived" merely appear in a note which is not secured by a mortgage. Its debatable character could not be better illustrated than by the fact that the members of this court as now constituted entertain different views upon the question. Regardless of what the answer to that question should be, it is undoubtedly a judicial question and the power to decide the question was vested in the court rendering the judgment. As we have observed, the finality of that decision did not depend upon the correctness of the judgment entered, but rather upon the power of the court to make the decision. We need not in approving that judgment as a final determination of the issue go so far as to hold that authority could be conferred to sell any land without appraisement upon general execution by virtue of the statute under consideration. but we do conclude and hold that, where the judgment is impressed as a lien upon particular real estate, the order of the court directing that the sale thereof shall be made without appraisement constitutes a final determination of the applicability of the statute to the contract involved in the action.

In the case of Bledsoe v. Green. supra, there had been a mortgage foreclosure sale without appraisement. Certain language was incorporated in the mortgage which. under our own opinion, did not constitute a waiver of appraisement, but the trial court in the judgment preceding the sale, which was not appealed from, construed the language otherwise and found that the mortgage. contained the words "appraisement waived," or words of similar import. In discussing the power of the trial court to construe and interpret the language in the proceedings therein collaterally attacked, we said:

"The court had the right to construe the mortgage; the court did construe the mortgage; the construction placed upon the mortgage by the court is conclusive except upon appeal. Holleman v. Cushing, 84 Okla. 156, 202 P. 1029. No appeal having been taken, this judgment became, and is, final as to Jettie Perry."

Counsel for the defendant in error in this action rely upon the case of Brown v.

State Nat. Bank, 133 Okla. 173, 271 P. 833, as expressing a view contrary to our conclusion above announced. In that case a judgment ordering a sale without appraisement was declared void upon consideration of the concurrence of two things appearing upon the face of the judgment roll: (1) The absence of a specific finding determining that the mortgage therein involved contained the words "appraisement waived," and (2) the fact that the mortgage as shown by the face of the judgment roll did not contain the words "appraisement waived," or words of similar import.

It is, of course, familiar law that the judgment of a court of general jurisdiction is deemed to include a specific finding in accord with the judgment upon each issue settled thereby. While this rule was not discussed in the case of Brown v. State Nat. Bank, supra, it was evidently not applied upon the theory that such presumed specific finding would be directly contrary to the record as shown by the judgment roll. The distinction between that case and the case at bar is at once apparent. An examination of such judgment roll in connection with the questioned judgment in this case does not affirmatively disclose that the note did not contain the words "appraisement waived". On the contrary, such examination affirmatively discloses the existence of the words "appraisement waived" in the note upon which that judgment was based.

Our disposition of the point under consideration would not be complete without brief allusion to the case of Hancock v. Youree, 25 Okla. 460, 106 P. 841. which was cited with approval in the case of Cuff v. Koslosky, supra. The case of Hancock v. Youree involved a mortgage foreclosure sale in which the sale was declared void for want of appraisement. But an examination of the opinion in that case will disclose that in the judgment foreclosing the mortgage there was apparently no direction that the land should be sold without appraisement. If there was such a prior direction in the judgment preceding the sale in that case, it was not mentioned in the opinion, and its effect was not therein considered or discussed.

In concluding that a prior order directing a sale without appraisement upon consideration of section 451. O. S. 1931. constituted a final adjudication that such sale should be conducted in that manner, we have experienced difficulty in finding applicable judicial authority from other jur-

isdictions. Counsel do not call our attention to any other state in the Union which now has a similar statute. Kansas, from which we borrowed the statute, seems to have repealed the same. However, we call attention to an analogous sale which was held immune from collateral attack in the case of Robertson v. Howard, 229 U. S. 254, 57 L. Ed. 1174, 33 Sup. Ct. 854.

In deciding that section 451, supra, vested in the district court the power to decide whether particular real estate sought to be impressed with a lien should be sold without appraisement by reason of contractual provisions, we are not unaware of that line of cases which hold, in substance, that when a court derives its power to act from a particular statute, it cannot, in acting, exceed the power conferred by statute. This rule applies to statutes in which the limits of the power are clearly defined. It does not apply in connection with a statute which, in the first instance and preliminary to its application, presents a debatable judicial question concerning whether it confers the power to act. In such instances, courts are authorized to inquire into their own jurisdiction and determine as a preliminary judicial question their power to proceed. In support of their judgments, they will be presumed to have made the proper preliminary inquiry, and such judgments can only be reviewed for error upon appeal.

In accord with the views herein expressed, the judgment of the trial court is reversed and remanded, with directions to sustain the sheriff's deed as to the 9/21 undivided interest in the premises owned by Mrs. Butler. Preliminary, however, to the granting of any affirmative relief by way of partition, the trial court is directed to require such additional notice to the other parties interested in the land as may be deemed appropriate to advise them of the request for such relief.

BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., concurs in result. OSBORN, V. C. J., and WELCH, J., dissent. RILEY, J., absent.

McNEILL, C. J. (concurring). I concur in the result, but it seems to me that the real question is not answered by the majority opinion.

The question presented is whether waiver of appraisement in a promissory note dispenses with the appraisement of land sold under execution in an attachment proceeding.

On November 23, 1917, the land in question had been set apart to Odia C. Godard and the minor children of her deceased husband by the county court of Lincoln county as a homestead for the use of the family. The widow, after the death of her husband, never lived on said premises, but remarried a man by the name of Butler in 1919. She and her second husband lived at various places and for a while in Arizona. Later they returned to Oklahoma.

J. W. Cherry, under a contract, furnished to Mrs. Godard, after her marriage to Butler, certain building materials for the construction of a house on said land, and on January 2, 1923, Mrs. Godard, then Mrs. Butler, executed a note in the sum of $281.25 to Cherry for the materials which had been furnished. Note is as follows:

"$281.25            Warwick, Okla. Jan. 2, 1923

"On or before Oct. 1 after date I promise to pay J. W. Cherry or order at his office in Warwick, Oklahoma, the sum of Two Hundred Eighty-One and 25/100 Dollars for value received, with interest at 10 per cent. per annum from date. This note is given for materials furnished by J. W. Cherry, to Mrs. Odia Butler under contract to be used and which was used in the construction of dwelling house a certain dwelling house situated on the premises now owned by Mrs. Odia Butler and occupied by Ed. Danker.

"The makers and endorsers of this note hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest and all exemptions that may be allowed by law, and valuation and appraisement laws waived and each signer and endorser makes the other an agent to extend the time of this note, and if this note be placed in the hands of an attorney, I, we or either of us, agree to pay reasonable attorney's fee and all other costs of collection.

                        "Odia Butler.
"P. O. Welston, R.F.D. 5 Okla.
"E½ SE¼ Sec. 31, Twp. 14 R. 3."

It is to be observed that this note specifically states that it is given for material furnished by Cherry to Mrs. Butler under contract which was used in the construction of a dwelling house situated on the premises then owned by Mrs. Odia Butler and occupied by Ed. Danker. The note, after the signature of Odia Butler, gives a description of the land in question. The note contained a waiver of "valuation and appraisement laws."

Cherry, on December 28, 1925, filed a suit and levied an attachment on the land in question, obtaining service by publication

on Mrs. Butler. Mrs. Butler filed a motion to dismiss the attachment, and thereafter an answer which presented the issue of whether the land claimed as a homestead was subject to levy by attachment. The court sustained the order of attachment which had been issued and levied upon said land and then ordered that the land so attached should be sold after six months without appraisement. There was no appeal from that judgment. Execution followed; the land was advertised and sold; and the sale was confirmed by the court. A sheriff's deed was duly executed and delivered to J. W. Cherry.

Thereafter, the present action was instituted by Mrs. Butler and a minor son for possession of the premises in question, damages and accounting. This action challenged the validity of the sheriff's deed.

The real question for determination is whether the sheriff's deed is void because the land was sold without appraisement by reason of the provision in the aforesaid note in reference to waiver of appraisement.

This court has not passed upon this specific question, and this question shou'd not be confused with those cases holding that where no appraisement was had after judgment on execution the sale was void. See Given v. Owen, 73 Okla. 146, 175 P. 345; Cuff v. Koslosky, 165 Okla. 135, 25 P. (2d) 290.

In the case at bar appraisement was waived specifically in the note.

Section 451, O. S. 1931, applies in the instant case because the judgment which was taken was based upon "notes" or "written contract" containing the words "appraisement waived." This section is as follows:

"If the words 'appraisement waived,' or other words of similar import, shall be inserted in any deed, mortgages, bonds, notes, bill or written contract, any court rendering judgment thereon shall order as part of the judgment that the same, and any process issued thereon, shall be enforced, and that lands and tenements may be sold thereunder without appraisement; and such judgment, and any process issued thereon, shall be enforced, and sale of land and tenements made thereunder, without any appraisement or valuation being made of the property to be sold: Provided, that no order of sale or execution shall be issued upon such judgment until the expiration of six months from the time of the rendition of said judgment."

It appears that this section of the statute was adopted from the Statutes of Kansas as early as 1893, and was repealed by Kansas in 1901, and it is probably due to the early repeal of the statute by Kansas that we find no decisions from that state on this question.

The Indiana statute dealing with this question was adopted by that state in 1861 (Acts 1861, chap. 75) and is as follows:

"Upon any instrument of writing made within this state or elsewhere containing a promise to pay money, without relief from valuation laws, judgment shall be rendered and execution had accordingly."

In 23 C. J. 459, sec. 266, the general rule is announced that no appraisement of real estate sold under execution is necessary in the absence of statute requiring it.

The same text, 23 C. J. 460, sec. 269, upon the question that waiver may be expressed in writing evidencing the debt, announces the following rule:

"(Sec. 269) d. Waiver. As a general rule, the judgment debtor, for whose benefit appraisement clauses are included in statutes prescribing the mode of execution, may at his option legally waive the right of having his property appraised before sale under the execution, although there is authority to the contrary. * * *

"How evidenced. The judgment debtor's exercise of the waiver of his right to have his property appraised may be evidenced by his expressly authorizing it in writing, and it is frequently incorporated in the contract by which the debt on which the judgment is based is created, or constructively by his acquiescence in the sale of the property by the officer, of which he has full notice, the later on the ground of estoppel."

In support of that rule the following cases are cited: Baker v. Roberts, 14 Ind. 552; Vesey v. Reynolds, 14 Ind. 444; Smith v. Doggett, 14 Ind. 442; Deam v. Morrison, 10 Ind. 367; Kostenbader v. Spotts, 80 Pa. 430; Hageman v. Salisberry, 74 Pa. 280; Kimball v. Kelsey, 1 Pa. 183; Overton v. Tozer, 7 Watts (Pa.) 331; Carr v. Wright, 19 Wkly. N. C. (Pa.) 576 (judgment on judgment note waiving appraisement); Cole v. Schumacher, 1 Lack. Leg. Rec. (Pa.) 497. See, also, Levy v. Spitz (Pa.) 146 Atl. 548.

We have no statute prohibiting the waiver of valuation and appraisement laws. Debtors may renounce and waive the benefit of appraisement. See Kleber's Void Judicial and Execution Sales, section 334, at page 303. That text cites the following cases:

"Desplate v. St. Martin, 17 La. Ann. 91; Insurance Co. v. Bagley, 19 La. Ann. 89; Overton v. Tozer, 7 Watts, 331; Stockwell

v. Byrne, 22 Ind. 6; Dean v. Morrison, 10 Ind. 367; Smith v. Doggett, 14 Ind. 442; Baker v. Roberts, 14 Ind. 552; Stockmeyer v. Tobin, 139 U. S. 176, 11 Sup. Ct. Rep. 504."

Freeman on Executions (3rd Ed.) 2nd vol., sec. 284, on page 1636, states that the appraisement laws were intended for the protection of the debtors and that they may be waived by those for whose benefit they were enacted. Freeman cites the same cases in support of this proposition as Kleber. See, also, Davis v. Bond, 14 Ind. 7; Smith v. Rowe, 14 Ind. 442; Broadwell v. Rodrigues, 18 La. Ann. 68. In the case of Smith v Rowe, supra, an action was instituted upon promissory notes waiving the benefit of valuation and appraisement laws, and the only question considered was the constitutionality of the statutes authorizing the rendition of judgments to be collected without appraisement upon promissory notes waiving such appraisement. In that case the court upheld the constitutionality of the statute authorizing the practice of entering and enforcing the collection of judgments without valuation or appraisement. See, also, Vesey v. Reynolds, 14 Ind. 444.

In the case of Howe v. Dibble, 45 Ind. 120, the court considered a sale without valuation under a mortgage foreclosure. The notes secured by the mortgage contained a stipulation that they should be collectible without relief from valuation laws, but the mortgage contained no such provision. In that case the court held that the stipulation in the notes must be carried into the mortgage by the judgment and that the property should be sold without appraisement.

The Supreme Court of Indiana, in Reily v. Burton, 71 Ind. 118, considered the act concerning promissory notes (Acts 1861, page 145, 1 Rev. St. 1876, page 636). Section 15 provided that, when any instrument of writing made within the state or elsewhere contained a promise to pay money without relief from valuation or appraisement laws, judgment should be rendered and execution had thereon accordingly. In that case a note was given for a sum of money and the benefit of the valuation and appraisement laws was waived therein, as also in a mortgage given to secure the payment of the note. The court held that the plaintiff succeeding in the action on the note and for foreclosure of the mortgage was entitled to judgment to be executed without relief from valuation or appraisement, and execution should have been had thereon accordingly.

Defendants in error place reliance on the case of Levicks, Barrett & Kuen v. Walker, 15 La. Ann. 245, 77 Am. Dec. 187, opinion rendered in May, 1860, in support of the theory that the validity of a waiver of appraisement when inserted in an ordinary note is one which will not be enforced by the courts.

In that case the Supreme Court of Louisiana said:

"We think the stipulation in a contract, that the property of the debtor shall be sold without appraisement in the event of nonpayment at maturity, one of those pacts which ought not to be recognized by our courts in the decree rendered upon such contract. The law has, by express provisions, ordained the mode in which its own officers shall enforce the judgments of the courts.

"Parties regulate their own conduct by their stipulations, but they cannot prescribe rules of proceeding for public officers, nor demand that the courts of justice shall depart from the usual modes of enforcing their decrees. If, before judgment, the creditor may stipulate the manner in which the same shall be executed, the principle will sanction an endless variety of modes of execution of judgments, and, indeed, the parties may waive all formalities and all delay, and may even consent that some other person than the sheriff shall sell the property of the debtor, and execute the decree of the court. And if a decree giving effect to such contract be legal, then also the sale under it would be legal, and other creditors might find themselves deprived of their common pledge without notice. In view of our complicated system of mortgages and privileges, and the restrictions upon sales where parties are in insolvent circumstances, as well as the responsibility imposed by our laws upon the sheriff and his sureties, we are of the opinion that such stipulations ought not to be enforced. If they be not immoral, they may be considered as affecting the rights of others, and void."

However, the court, thereafter, in the case of Broadwell v. Rodrigues, 18 La. Ann. 68 (1866), considered a suit in injunction in which the question involved was whether a clause inserted in a mortgage dispensing with the appraisement required by articles 673 and 745 of the Code of Practice in case of a judicial sale was valid in law.

In that case plaintiff, as mortgagor, relied upon the application of the principle of law found in the first paragraph of the 11th article of the Louisiana Civil Code, which provides, in part, as follows:

"* * * Individuals cannot, by their conventions, derogate from the force of laws

made for the preservation of public order or good morals."

Plaintiff stressed therein the fact that such a law was a public law and designed for the preservation of public order and that said clause of waiver was null and void, and that notwithstanding the same the mortgagor was entitled to have an appraisement of the property previous to its sale under executory process by the sheriff.

The defendant urged the second paragraph of said article 11 of said Civil Code, which provided as follows:

"But, in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."

Defendant contended that there was nothing in the Code to prohibit a waiver of appraisement and that it was not in any manner contrary to the public good.

In that case there is a very learned and interesting discussion in reference to the renunciation of private rights. The court said:

"We are not prepared to subscribe unrestrictively to the plaintiff's theory, that formalities prescribed by law, in executing final process, are so essentially obligatory on the parties to a suit, that they may not be dispensed with. There is certainly in the Code no express prohibition against a party's waiving an appraisement of his property, either before or after the seizure of it. Nor is there anything in the context of the law, or in any law on the subject matter, from which such a prohibition is to be implied. * * *

"Between criminal and civil laws, there is marked difference; the former are strictly public laws, and must be so deemed by the courts of justice which administer them, and by individuals who come under their control.

"But civil laws, which involve mere private rights, may be often lawfully relaxed and waived by covenants in order that the varied transactions, which in the course of human events, are constantly occurring, and with which no code of laws can possibly keep pace, may be facilitated and the more readily consummated.

"This we apprehend to be the general rule, as relates to the renunciation of private rights. The exceptional cases are those which trench on public order; and, within those exceptional cases, is not embraced, as we conceive, the stipulation in the mortgage granted by the plaintiff in injunction. * * *

"This absolute dominion of the owner over his property, is well expressed by the terms of the Roman law. 'Tua quisqua rei moderator et arbiter.' He may use or abuse it as he lists. 'Jus utendi et abutendi.'

"The owner of property may lawfully contract in relation to it, and he is constrained by no law, as to the terms and conditions on which he may dispose of, or affect it, except in cases for which the law itself has provided."

In that case the court held that the plaintiff's renunciation of the benefit of appraisement in her mortgage was legally valid and that she could not, afterwards, be allowed to attack the judicial sale as invalid. That decision was delivered in January 1866, and in March, 1866, the Legislature enacted a law requiring that all property sold under execution should bring its full appraisement. The Supreme Court in the case of New Orleans Mutual Insurance Co. v. Bagley (1867) 19 La. Ann. 89, again considered the same question of whether a clause in a mortgage dispensing with the appraisement of the mortgaged property was valid. In that case the lower court held that the mortgaged premises could not be sold without appraisement, but on appeal the Supreme Court held that the property should be sold without appraisement, and that the statute of March, 1866, did not deprive the debtor of the right to make a waiver of the benefit of appraisement, thereby adhering to the rule announced in Broadwell v. Rodriguez, supra, in holding that a clause waiving appraisement in a mortgage was legal and valid.

From these decisions in Louisiana it is apparent that they have no application in determining the waiver of appraisement provision in section 451, O. S. 1931, supra, the constitutionality of which is not questioned, and I have been unable to find any statute in Louisiana similar to said section which authorizes the sale of land without appraisement pursuant to a judgment rendered on a note which contains the words "appraisement waived" or words of similar import.

In the action instituted by Cherry against Mrs. Butler, the trial court, after rendering judgment for the amount due under the note in question, sustained the attachment proceeding and made the following order:

"And it is the further order of the court that, after expiration of six months from the date of rendition of this judgment, viz.: the 13th day of April, 1928, an execution be issued by the court clerk of said county to sell said real estate, in the manner provided by law for sales of real estate on execution

without appraisement, to satisfy and pay the sums hereinbefore adjudged to the plaintiff.

"And it is further ordered by the court that any other process issued for the collection of said judgment shall be enforced, if lands and tenements are levied upon, by sale without appraisement, but no such process, sought to be enforced against the lands and tenements of the defendant, shall be issued on this judgment until the expiration of six months from this date. To all of which order and judgment defendant excepted."

I conclude that the waiver of appraisement contained in the note was sufficient to authorize the sale of the attached land under execution without appraisement, and that Mrs. Butler as debtor in signing the note in question waived and legally renounced the benefit of appraisement in reference to the land which was mentioned in said note and which was directed to be sold by the trial court without appraisement but not until the expiration of six months from the rendition of said judgment.

I consider it unnecessary to discuss the question of homestead determined adversely to Mrs. Butler in the attachment suit except to reiterate that a surviving spouse, having minor children, may abandon the homestead and thereby terminate the right of homestead in said minor children. Lusk v. Carter Oil Company, 172 Okla. 508, 53 P. (2d) 656.

It is my conclusion that the trial court erred in directing a verdict for the plaintiff. The judgment should be reversed and remanded for further proceedings.